JOHN HENRY OUTWATER, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF CARLSTADT ET AL., DEFENDANTS.

Argued February 19, 1901—Decided June 10, 1901.

1. The Borough act of 1897 (*Pamph. L.*, p. 285) authorizes the council "to cause an assessor's map of the borough to be made, among other things showing the location and width of each street, road or avenue and of each individual lot of land and premises

and cause the same to be numbered or otherwise designated thereon," and a resolution and contract for such a map may fairly include as incidental thereto, if not actually within the terms of the act, the furnishing of lists of property owners for five years, and furnishing the location of not more than fifteen monuments.

2. That an imperfect map covering but part of the borough was already in existence did not prevent the council from causing to be made such a map as was authorized by the Borough act.

3. When the Borough act provides that three councilmen and the mayor shall constitute a quorum for the transaction of business, a resolution passed by the votes of three councilmen and the mayor, who has a vote only in case of a tie, will be sufficient, notwithstanding a by-law of the borough that no resolution involving the expenditure of money should be passed without the votes of two-thirds of all the members of the board.

4. A by-law cannot control a general law of the state.

On *certiorari.*

Before Justices VAN SYCKEL, GARRISON and GARRETSON.

For the prosecutor, *Anderson Price.*

For the defendants, *Shafer & Conkling* and *Copeland, Luce & Kipp.*

The opinion of the court was delivered by

GARRETSON, J.   The prosecutor brings up for review a resolution of the mayor and council of the borough of Carlstadt "that the North Jersey Title Guarantee Company be engaged to make an assessment map of said borough of Carlstadt, and to furnish lists of property owners for the next five years, and also to furnish the location for not more than fifteen monuments along the boundary lines of the borough at such points as may be designated by the mayor and council, for the sum of twenty-seven hundred and fifty dollars, payment to be made as specified in contract."   The contract provides specifically what the map should contain and the times of payments, which were to be by certificates of indebtedness, drawing interest at the rate of five per cent. per annum.

"A general act relative to boroughs (Revision of 1897)"

(*Pamph. L., p.* 285) provides, at section 36: "The council may cause an assessor's map of the borough to be made, among other things showing the location and width of each street, road or avenue and of each individual lot of land or premises and cause the same to be numbered or otherwise designated thereon, and may for that purpose issue certificates of indebtedness for the cost thereof, redeemable after one year and payable in seven years from date, together with such rate of interest, not exceeding six per centum per annum, as may be advisable, and it shall be a sufficient description of property for the purposes of taxation to refer to the said map by lot and block number."

· The resolution adopted, so far as causing an assessor's map to be made, was within the terms of the powers conferred by this legislation, and the furnishing of lists of property owners and the location of monuments was fairly incidental thereto.

This was not a delegation of the duties required of the assessors by general laws, and if it were, the legislation authorized it.

This section does not provide whether municipal action is to be by resolution or ordinance. Section 29 of the same act, giving the power to the common council to raise money by taxation, authorizes that power to be exercised either by resolution or ordinance, and it has been held that procedure by ordinance is only necessary when required by statute. *Courter* v. *Newark,* 25 *Vroom* 325; *Brady* v. *Bayonne,* 28 *Id.* 379; *Halsey* v. *Rapid Transit Street Railway Co.,* 2 *Dick. Ch. Rep.* 380.

It is claimed that the borough had a map at the time of the adoption of the resolution in question. A map had been prepared by the assessor in 1896 for the borough as it then existed, but the area of the borough had been increased since then by taking in a large territory, and an assessment map made of the new portion by the assessor of his own motion for his own convenience, not from any measurements, but by copying maps of original owners. It is evident that no complete map existed at the time of the passage of the resolution brought up, and the mayor and council had full authority under the Borough act of 1897 to cause an assessor's map to

be made. The validity of the resolution is also attacked·on the ground that a by-law of the borough passed under the provision of the Borough act of 1878 (*Gen. Stat., p.* 181, § 12), authorizing by-laws and rules for the government of the mayor and council, provides that no resolution involving the expenditure of money shall be passed without a vote of two-thirds of all the members of the board; that as the board consisted of six councilmen and the mayor, and three council-men voted for the adoption of the resolution and three voted against the adoption thereof, and there being a tie, the mayor gave the casting vote for the resolution; that therefore this by-law was not complied with. The Borough act of 1897 pro-vides (section 23) that the mayor and councilmen, in number six (section 2), shall constitute the council; that three coun-cilmen and the mayor shall constitute a quorum for the trans-action of business. The mayor shall not vote except to give a casting vote in case of a tie. Section 26 of the same act pro-vides that no ordinance shall be finally passed except by a vote of a majority of the whole council; the municipal action in this case was by resolution, which was adopted by a majority of the whole council.

Section 27 provides for the passage of resolutions pecuni-arily obligating the borough, over the mayor's veto, by a vote of two-thirds of all the councilmen.

The effect of a by-law, in view of such legislative action, has been determined by this court in the case of *Barnert* v. *Paterson,* 19 *Vroom* 395. There a by-law required the votes of two-thirds of the whole members of the board upon any action involving the expenditure of money, and the charter of Paterson provided that a majority of the whole number of members should constitute a quorum for the transaction of business, and the court held the true rule to be: "When a charter of a municipal corporation or a general law of the state does not provide to the contrary, a majority of the board of aldermen constitute a quorum, and the vote of a majority of those present, there being a quorum, is all that is required for the adoption or passage of a motion or the doing of any

other act the board has power to do," and that under the power in the charter "to establish its own rules of procedure, it was not designed to confer on the board the adoption of a rule changing either the general law or any special provision in the charter; such by-laws must be in accordance with the charter or of the general rules of law."

The fifth reason is "because said resolution was passed January 17th, 1901, and approved January 18th, 1901."

The argument of counsel is that the mayor should not receive it until January 18th, 1901, and could not sign it until January 19th, 1901.

We cannot understand this argument. The provision of the Borough act (section 27) is that every resolution appropriating money or in any way tending to pecuniarily obligate the borough "shall within five days after the passage thereof be presented to the mayor, &c. If he approves he shall within five days after its receipt by him sign and file it with the borough clerk," &c. There is no evidence to show that this provision was not complied with. The effect of this provision is to limit the time within which action is to be taken. The resolution must be presented to the mayor within five days after its passage, not five days after its passage, and it may be presented to him at any time within those five days, no matter how shortly after its passage, and, while the mayor has five days to consider it, he must sign it within those five days, not after the five days, and he may sign it immediately after its presentation to him.

We find no illegality in this resolution, and the action of the common council should be affirmed.