ALFRED O. HICKS, PLAINTIFF IN ERROR, v. THE LONG BRANCH COMMISSION ET AL., DEFENDANTS IN ERROR.

Argued March 18, 1903—Decided June 15, 1903.

1. When the chairman of a legislative board refuses to put to vote a motion which is properly before the board for its action, the motion may be legally put by a temporary chairman, selected at once by the board.

2. The standing rules of the Long Branch commission, adopted under authority of the statutes by which the commission is organized, are obligatory on the commission, so that its action in disregard of them is illegal.

3. According to the standing rules of the Long Branch commission, in every vote relating to a special appropriation, the ayes and nays must be taken and recorded. *Held*, that a resolution, directing the execution of a contract which would bind the municipality to make payments that could be met only by special appropriations, could not be lawfully passed without taking and recording the yeas and nays.

On error to the Supreme Court. The *certiorari* was heard before Mr. Justice Fort, under a written stipulation of consent, under section 295 of the Practice act, and his opinion was as follows:

FORT, J.   The *certiorari* in this case brings up a resolution of the Long Branch commission, passed November 24th, 1902. There are but few questions that need to be considered.

There is no proof to justify any allegation of fraud or of a palpable abuse of discretion in the board of commissioners in passing the resolution.   In awarding contracts, where there are no arbitrary statutory regulations, a municipal body vested with the power to make them has a large measure of discre-tion.   In reviewing such action the court will only inquire into the honesty and good faith of its exercise.   Two cases, recently decided in this court, contain a reference to a line of decisions on this subject.   *Ryan* v. *Paterson,* 37 *Vroom* 533; *Kraft* v. *Board of Education,* 38 *Id.* 512.

Upon the evidence in this case I find the following facts:

*First.* That the resolution brought up was duly passed, by a *viva voce* vote, on November 24th, 1902.

*Second.* That Winfield S. B. Parker, one of the commissioners, was not, at the time of the passage of said resolution, the attorney of the Tintern Manor Water Company, and that he had no interest therein.

There is proof in the cause, not controverted, that Mr. Parker represented the water company during 1902 in two matters, but in both of these matters it likewise appears that the city was quite as much interested as the water company.

In the spring of 1902 Mr. Parker had insisted that the water company should pay to the city its franchise tax, and the secretary of the company told him that they did not think it was a legal tax against them, but that, if he would look it up and advise them that it was legal, they would pay. He did this, gave them an opinion that they were bound, the water company paid and the city received the tax.   It would be difficult to question Mr. Parker's motives in that case.

The other case was one in which the city was more vitally interested than the water company, and under quite as great an obligation to take proceedings.   One Dangler was polluting the city's water-supply by maintaining objectionable condi-tions adjacent to it.   The water company asked Mr. Parker to secure an injunction to prevent the continuance of the

nuisance. He did so. The nuisance was abated. It would have been equally proper for the city to have done this. There could be no possible antagonism to the city's interest under these employments.

There is not a semblance of proof that, in any other way or at any other time, did Mr. Parker ever appear for the Tintern Manor Water Company. The proof is that he has not now, and never has had, any interest in the company. Mr. Parker is a member of the bar, in good standing, and of excellent repute. No attempt was made to show that he received any improper compensation in either case. Upon the passage of the resolution in question he was clearly entitled to vote. This case does not come within the rule enunciated in the case of *Traction Co.* v. *Board of Works,* 27 *Vroom* 431. In that case the member of the board voting was clearly an interested party at the time he gave his vote.

*Third.* That there was sufficient appropriation, legally voted and unexpended, to cover any sums required to meet the expenditure authorized, if any was authorized, by the resolution.

*Fourth.* That there was no irregularity in the procedure in passing the resolution which should vitiate it. The president of the board of commissioners of Long Branch is only the mouthpiece of the commissioners. It is his duty to put a motion duly made. If he refuses, any member may put it. Any other rule is destructive of legislative functions.

*Fifth.* That the evidence is conclusive that he did refuse to put the motion on the passage of the resolution here attacked.

Considerable evidence has been taken, and, on the argument, much stress was laid upon the alleged fact that only two votes were heard in favor of the passage of the resolution. The minutes show that it was carried, and these were duly ratified at the succeeding meeting. There was no challenge, by any member, of the announcement that the resolution was carried, when that statement was made by the chair, nor any demand for verification of the vote by show of hands or roll-call.

On a *viva voce* vote, in a legislative body, the whole body is counted as the chair announces. Mr. Cushing states it

this way: "In all his official acts and proceedings, therefore, he represents and stands for the assembly; and his will is taken for that of the whole body, compendiously expressed through him, and by his mouth, instead of being collected from the individual wills of all the members." *Cush. Law & Pr. Legis. Assem.,* § 294. But, if it be proper to go into the proof of the actual vote, then, in the case before me, the proof is as clear as it can be made that five members of the board voted for the resolution. There is but one question before me, viz., as to the legality of the passage of this resolution to authorize the making of a contract. Whether all that was necessary to be done to have a contract executed, or whether the form of agreement in the report of the finance committee, on November 17th, 1902, was approved and authorized, by the action of November 24th, 1902, to be executed, is not decided; for, as I view this case, it is not before the court. Whether there is any contract, pursuant to that resolution, must be tested in some other way.

The writ is dismissed.

For the plaintiff in error, *Robert H. McCarter.*

For the Long Branch commission, *Thomas P. Fay.*

For the Tintern Manor Water Company, *Corbin & Corbin.*

The opinion of the court was delivered by

DIXON, J. On November 17th, 1902, the finance committee of the Long Branch commissioners submitted to the commission a proposed contract between that body and the Tintern Manor Water Company, by which the company was to have the exclusive privilege of supplying the commission with water for municipal purposes during a period of ten years, at stated annual rentals to be paid by the commission. At a meeting of the board on November 24th, Commissioner Van Note offered a resolution directing the president and clerk of the commission to sign and seal the contract as the act and deed of the commission, which was seconded, and moved

that the roll be called on its adoption. Thereupon the president stated that he was opposed to the resolution and declared it out of order, from which ruling an appeal was duly taken and the ruling was reversed. The president then declined to put the question on the adoption of the resolution, whereupon Commissioner Van Note moved that Commissioner Parker act as temporary chairman, and this motion, being seconded, and put by the clerk, was carried. Commissioner Parker then put the question on the adoption of the resolution, and it was carried. On none of these motions were the yeas and nays taken and recorded.

On *certiorari* to review this action of the commission the Supreme Court adjudged it legal, and the present writ of error is brought to reverse this judgment.

The first claim of the plaintiff in error now open for consideration is that, although the permanent chairman refused to put the proposed question to a vote, yet while he was present it was unlawful for the commission to adopt any other method of obtaining a vote on the question without first formally trying the chairman for malfeasance and removing him from office.

Under the act to establish the Long Branch police, sanitary and improvement commission (*Pamph. L.* 1867, *p.* 976), and its supplements (*Pamph. L.* 1869, *p.* 998; *Pamph. L.* 1875, *p.* 477), the board of commissioners is directed to "organize by electing a chairman from among themselves," and is empowered to determine the rules of its own proceedings. Various powers are given to the commissioner chosen as chairman, who, in respect to those powers, is styled "president," but none of these powers relate to his functions as chairman of the board.

By the standing rules and orders of the commission, enacted by ordinance June 2d, 1890, it is provided that the commissioners shall elect one of their number "who shall be president of the board and also mayor of the city for the ensuing year;" that, "in the absence of the president from any meeting of the board, the members shall choose a temporary president to preside until the president appears," and that "it shall be

the duty of the president to preside at all meetings of the board, preserve order and decorum therein, and enforce at all times the provisions of the charter, of the by-laws and the rules of debate."

Inasmuch as the statutes give to the commissioner chosen by the board to preside at its meetings no powers or rights in those meetings other than such as are implied in his designation as chairman, and as the provisions of the standing rules are equally limited, it is evident that we must test the legality of the conduct by which he was temporarily superseded as chairman by the general rules applicable in such a juncture. This eliminates from consideration the decision in *Billings* v. *Fielder,* 15 *Vroom* 381, which resulted from the peculiar authority conferred by statute upon the director-at-large in his function as chairman of the board of freeholders.

The general doctrine regarding the authority of one chosen to preside over a deliberative body was vividly stated on a memorable occasion, when in 1642 the king entered the House of Commons to compel the arrest of the five members whom before the peers he had accused of treason. To his demand whether they were present in the House, addressed to Speaker Lenthall, the latter answered: "I have neither eyes to see nor tongue to speak in this place, but as the House is pleased to direct me, whose servant I am here." The same metaphors had previously been used by Speaker Glanvylle, who declared himself to be "the mouth, indeed the servant of all the rest of the members of the House, to collect faithfully and readily the vote and genuine sense of a numerous assembly," and also in the House itself where the speaker was designated as "but the servant to the House and not a master or a master's mate."

This view is approved by writers on parliamentary law. 2 *Hats. Prec. Par.* 230; *Cush. Law & Pr. Legis. Assem.,* § 294. It appears reasonable, when it is remembered that the authority of a chairman is derived wholly from the assembly itself, and that he is only a means provided for enabling the body to exercise its powers in an orderly way. His functions are utterly unimportant save as they are auxiliary to that end.

When, therefore, his conduct in any particular case has no other aim and effect than to thwart the purpose which his office is designed to assist, there must reside in the assembly a right to pass him by and proceed to action otherwise. This right is but a branch of the power which assemblies exert in choosing temporary officers when the permanent officers are absent. It is not their absence which justifies the exercise of the power, but the fact that they are not performing the duties necessary for the proper fulfillment of the functions of the assembly. Inability or refusal to perform those duties has the same effect as absence in suspending the ordinary functions of the convention, and equally warrants the selection of a temporary chairman. The power is inherent and inseparably attached to the right of the body to convene and act. It is exercisable, when not restrained by some extrinsic law, at the will of the body. *Jeff. Man.* 36; *Cush Law & Pr. Legis. Assem.,* § 299.

In *Billings* v. *Fielder, ubi supra,* Mr. Justice Van Syckel said: "When the director is necessarily or willfully absent from the meetings of the board, then *ex necessitate,* the general rule of parliamentary law which governs legislative bodies must apply, so far as to enable the board to elect a presiding officer *pro tempore* to conduct its deliberations in due and orderly form;" and in a subsequent clause he coupled with the absence of the director his refusal to act in his official capacity at a meeting of the board. Similarly, in *State* v. *Lasher,* 42 *Atl. Rep.* 636, the Supreme Court of Connecticut recognized the right of a deliberative board to have any member act in place of its regular chairman, when the latter attempts to thwart its will. For the purpose of thus selecting a temporary chairman the clerk of the body usually puts the necessary questions. *Cush. Law & Pr. Legis. Assem.,* § 315.

We therefore are of opinion that it was lawful for Commissioner Parker to act as chairman of the meeting on the occasion in question.

It remains to consider whether the action of the board in the adoption of the resolution was legal. Its legality is denied because the yeas and nays were not taken and recorded.

The standing rules, adopted by ordinance under the express

authority of the charter, as before stated, provide that "on every vote relating to any special appropriation the yeas and nays shall be taken and recorded." This rule was as binding upon the commission and its members as any statute or other law of the commonwealth. *Hopkins* v. *Mayor of Swansea,* 4 *M. & W.* 621; *Holand* v. *Lowell,* 3 *Allen* 407; *Presbyterian Church* v. *New York City,* 5 *Cow.* 538; *Bradshaw* v. *Camden,* 10 *Vroom* 416; 1 *Dill. Mun. Corp.* (*4th ed.*), § 308. Its importance is manifest. It is designed to secure, in matters relating to the public funds, deliberate action on the part of each commissioner, and immediate as well as permanent public evidence thereof, readily accessible to the voters of the municipality, on which their representatives may be held responsible. 1 *Dill. Mun. Corp.* (*4th ed.*), § 291; 20 *Am.. & Eng. Encycl. L.* (*2d ed.*) 1214. It cannot be dispensed with, except in accordance with the standing rules, and no attempt was made to set it aside. Indeed, compliance with it was called for when the resolution was put fully before the board. Nor can the testimony of the commissioners or of bystanders be accepted as a substitute for it, because such testimony cannot completely supply its place. *Morrison* v. *City of Lawrence,* 98 *Mass.* 219.

We regard this resolution as coming within the terms of the rule. Although it did not directly make a "special appropriation" of public moneys, yet, if carried out, it bound the municipality to payments which could be met only by "special appropriations," and thus, in a fair sense, *related* to such appropriations.

For failure to take and record the yeas and nays, we think the resolution was not lawfully passed, and should be set aside.

Let the judgment of the Supreme Court be reversed, and a judgment be entered in accordance with the foregoing opinion.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Van Syckel, Dixon, Garrison, Garretson, Hendrickson, Pitney, Swayze, Bogert, Vredenburgh, Voorhees, Vroom. 13.