223 N.J. Super. 504 (1988)
538 A.2d 1331
MATAWAN REGIONAL TEACHERS ASSOCIATION; BOROUGH OF MATAWAN; IRIS ALBIN ET AL.,[1] PETITIONERS-APPELLANTS,
v.
MATAWAN-ABERDEEN REGIONAL SCHOOL DISTRICT BOARD OF EDUCATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1987.
Decided March 14, 1988.
*505 Before Judges FURMAN, BRODY and SCALERA.
Mark J. Blunda argued the cause for appellants Matawan Regional Teachers Association of Matawan and individual petitioners (Oxfeld, Cohen & Blunda, attorneys; Mark J. Blunda and, James J. Cleary, of counsel and on the brief).
James J. Cleary argued the cause for appellant Borough of Matawan.
Vincent C. DeMaio argued the cause for respondent (DeMaio & DeMaio, attorneys; Vincent C. DeMaio, of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for State Board of Education (Nancy Kaplen Miller, Deputy Attorney General, on the statement in lieu of brief).
The opinion of the court was delivered by BRODY, J.A.D.
The issue in this appeal is whether a local school board may lawfully adopt a plan, which includes the closing and sale of a school building, by a majority vote of its full membership after *506 consideration at a single public meeting even though its bylaws require adoption by a 2/3 vote of its full membership after consideration at two public meetings. We hold that the board is not bound by the bylaw that limits the authority of the majority, but is bound by the bylaw that requires two public meetings for adoption of the plan.
The dispute arose when the nine members of the Matawan-Aberdeen Regional School District Board of Education (the board) voted 5 to 4 to reorganize the school district by adopting "Plan C" (the plan). The cornerstone of the plan is the closing and sale of a school and an administration building in the Borough of Matawan. Closing the school requires relocating students and changing the range of classes in the remaining schools. Adoption of the plan is a matter of substantial local public interest. Petitioners are the union that represents board employees, and 92 resident-taxpayers of the district.
An administrative law judge (ALJ) summarily dismissed the claim that the bylaws barred adoption of the plan. The Commissioner of Education and the State Board of Education affirmed the ALJ's summary dismissal for the reasons he had expressed.
The relevant bylaws provide the following:
No policy[2] shall be adopted by the Board until it has received a 2/3 vote of the full Board at two public meetings.
* * * * * * * *
Bylaws shall be adopted, amended or repealed by a 2/3 vote of the full Board.[3]
Local boards of education "may exercise only those powers granted to them by the Legislature  either expressly or by necessary or fair implication." Fair Lawn Ed. Assn. v. Fair *507 Lawn Bd. of Education, 79 N.J. 574, 579 (1979). Boards derive the authority to adopt bylaws from N.J.S.A. 18A:11-1c, which provides that a local board shall
Make, amend and repeal rules, not inconsistent with this title or with the rules of the state board, for its own government and the transaction of its business and for the government and management of the public schools and public school property of the district and for the employment, regulation of conduct and discharge of its employees, subject, where applicable, to the provisions of Title 11, Civil Service, of the Revised Statutes; ...
Boards derive the authority to govern and manage the district from N.J.S.A. 18A:11-1d, which provides that a local board shall
Perform all acts and do all things, consistent with law and the rules of the state board, necessary for the lawful and proper conduct, equipment and maintenance of the public schools of the district.
N.J.S.A. 18A:11-1 is silent with respect to the number of votes necessary to adopt rules and to govern and manage the district. It must be assumed that by its silence the Legislature intended the common-law rule to apply, i.e., a majority vote of the members of the board constituting a quorum shall be sufficient. Peter's Garage, Inc. v. Burlington, 121 N.J.L. 523, 529 (Sup.Ct. 1939), aff'd o.b. 123 N.J.L. 227 (E. & A. 1939). At common law, a majority of a public body constitutes a quorum. Barnert v. Paterson, 48 N.J.L. 395, 400 (Sup.Ct. 1886). Thus the Legislature has empowered a majority of the majority of a local board to adopt bylaws and conduct the board's business.
We reject the argument that the Legislature has merely established a minimum number of affirmative votes necessary for local board action, which the board may increase in its bylaws to assure a broader consensus. Depriving the majority of its authority and responsibility to govern in favor of a broader consensus carries the risk of inaction where action is warranted. There may be actions which should be taken with the affirmative votes of an enhanced majority because of their overwhelming importance or because they constitute a departure from the norm. The Legislature has provided for such particular instances by requiring the vote of an enhanced *508 majority. A relevant example is the statute that prohibits a local board from selling school lands except "by a recorded roll call majority vote of its full membership." N.J.S.A. 18A:20-5. That requirement was met here.[4]
We conclude that the Legislature has preempted a local board's authority to strike the balance between requiring a broad consensus for action and the attendant risk of inaction. We arrive at this conclusion because striking that delicate balance is a matter of major governmental importance calling for uniform treatment throughout the State and is a subject on which the Legislature has acted in many specific instances by requiring an enhanced majority. See Overlook Ter. Manage. v. Rent Control Bd. of W. New York, 71 N.J. 451, 461-462 (1976) (listing the factors a court should consider in determining whether the Legislature has preempted a field).
Our holding conforms to long-standing precedent in this State. In Barnert v. Paterson, 48 N.J.L. at 400, the court held:
When the charter of a municipal corporation or a general law of the state does not provide to the contrary, a majority of the board of aldermen constitute a quorum, and the vote of a majority of those present, there being a quorum, is all that is required for the adoption or passage of a motion or the doing of any other act the board has power to do. [Citations omitted.]
Under the twenty-third section of the charter, the board is given power "to establish its own rules of procedure." But I do not think that under this power it was designed to confer upon this board the adoption of a rule changing either the general law or any special provision in the charter. Power to make such rules and by-laws was inherent in the corporation without this provision. Such by-laws must be in accordance with the charter or the general rules of law. The charter is silent and the general law requires a majority vote. [Citation omitted.]
*509 This holding was reaffirmed in Outwater v. Carlstadt, 66 N.J.L. 510, 513-514 (Sup.Ct. 1901), and followed in Traino v. McCoy, 187 N.J.Super, 638, 648 (Law Div. 1982). Accord In re Walters' Appeal (Endeavor-Oxford Union Free High School District v. Walters), 270 Wis. 561, 72 N.W.2d 535 (1955).
By contrast, the bylaw requiring that action on non-emergent matters of policy be considered at two public meetings does not conflict directly or indirectly with any statute. Its purpose is not to remove the responsibility and authority to act from those members of a local board who are authorized by state law to act. Rather, its purpose is to assure that those having that responsibility and authority act only upon due deliberation after notice to the public and interested third parties. Our courts have long compelled public bodies to adhere to such bylaws.
In Eggers v. Newark, 77 N.J.L. 198 (Sup.Ct. 1908), a Board of Street and Water Commissioners adopted an ordinance during the meeting at which it was introduced despite a bylaw that required publication between the first and second readings. The commissioners purported to suspend the bylaw by unanimous consent. The court held that the bylaws had been duly adopted pursuant to statute and therefore "constituted the working regulations governing [the Board's] action so far as not regulated by higher authority of the statute." Id. at 203. In upholding the bylaws and setting aside the ordinance the court said,
[I]t is evident that if they can be rendered nugatory by the suspension of a mere rule of order, the by-laws are little more than a suggestion instead of being, as they should be, a set of regulations for the transaction of public business by a public body, on which regulations the public itself has a right to rely. The more radical proposition is also advanced that, as the vote was unanimous to suspend the by-law and pass the ordinance, no one can be heard to complain. But this likewise loses sight of the right of the public to expect that ordinances, involving as they do the interests of the public, shall be enacted in due form as provided by law, and that part of that law is the regulations adopted and promulgated by the legislative body. The ordinance in question was one in which the public were vitally interested. [Id. at 204-205]
*510 In Hicks v. Long Branch Commission, 69 N.J.L. 300 (E. & A. 1903), the Court set aside a special appropriation because, in violation of the Commission's bylaws, each commissioner's vote was not recorded. The Court said,
The standing rules, adopted by ordinance under the express authority of the charter, as before stated, provide that "on every vote relating to any special appropriation the yeas and nays shall be taken and recorded." This rule was as binding upon the commission and its members as any statute or other law of the commonwealth. [Citations omitted.] Its importance is manifest. It is designed to secure, in matters relating to the public funds, deliberate action on the part of each commissioner, and immediate as well as permanent public evidence thereof, readily accessible to the voters of the municipality, on which their representatives may be held responsible. [Id. at 306-307.]
The binding effect of bylaws designed to give the public notice before official action is taken was reaffirmed by the Court in Erie R.R. Co. v. Paterson, 79 N.J.L. 512 (E. & A. 1910), where a Board of Public Works adopted an ordinance at a meeting held on a date not scheduled in its bylaws. In setting aside the ordinance the Court cited the language in Eggers with approval.
In the absence of any statute to the contrary, the board's bylaw requiring two public meetings to adopt the plan is binding. We must therefore set aside the resolution that purported to adopt the plan at a single meeting. Our determination renders moot the other issues that have been raised in this appeal.
Reversed.
NOTES
[1] There are 91 other individual petitioners who are residents and taxpayers of either Matawan or Aberdeen.
[2] The parties agree that the decision to close and sell a school is a "policy" decision.
[3] The board did not invoke a bylaw that provides for the suspension of bylaws when a majority of the board declares an emergency.
[4] The ALJ gave these additional examples in his opinion: in certain instances a local board may award a contract privately "by the affirmative vote of two-thirds of the full membership," N.J.S.A. 18A:18A-5(c); no teacher may be transferred "except by a recorded roll call majority vote of the full membership, ..." N.J.S.A. 18A:25-1; a local board may for good cause withhold a salary increment from a teacher "by a majority vote of all the members of the board of education," N.J.S.A. 18A:29-14; and textbooks must be selected "by the recorded roll call majority vote of the full membership," N.J.S.A. 18A:34-1.