794 A.2d 278 (2001)
350 N.J. Super. 72
Robert D. PRUNETTI, County Executive of Mercer County, Plaintiff,
v.
MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, Defendant.
Superior Court of New Jersey, Law Division.
November 13, 2001.
*283 Alfred B. Vuocolo, Jr., Mercer County Counsel, Trenton, for plaintiff the County Executive of Mercer County.
Arthur R. Sypek, Jr., Trenton, for defendant Mercer County Board of Chosen Freeholders.
James G. O'Donohue, Princeton, for defendant Mercer County Board of Chosen Freeholders (Hill Wallack, attorney).
Elizabeth E. Randall, Bergen County Counsel, Hackensack, for plaintiff the County Executive of Bergen County, amicus curiae.
William E. Nugent, Atlantic County Counsel, Linwood, for plaintiff the County Executive of Atlantic County, amicus curiae.
Juan C. Fernandez, Essex County Counsel, Roseland, for plaintiff the County Executive of Essex County, amicus curiae.
Robert E. Levy, Secaucus, for defendant Bergen County Board of Chosen Freeholders (Scarinci & Hollenbeck, LLC, Attorneys), amicus curiae. *279 *280 *281
*282 FEINBERG, A.J.S.C.

BACKGROUND
Until 1972 all of the twenty-one counties of New Jersey operated under a form of government that had not changed significantly since 1798. Michael A. Pane, New Jersey Practice, Local Government Law § 4.23 at 127 (3d. Ed.1999). In 1972, the Legislature adopted the Optional County Charter Law, providing a county the opportunity to reorganize its form of government into one of four alternative forms: (i) the County Executive Plan; (ii) the County Manager Plan; (iii) the Board President Plan; or (iv) the County Supervisor Plan. See N.J.S.A. 40:41A-1 et seq. Six counties have elected to reorganize their governmental structure pursuant to the Optional Charter Act. They are respectively: Atlantic, Bergen, Hudson, Essex, Mercer and Union Counties. Five of these counties, *284 including Mercer, have opted for the County Executive Plan. Pane, supra, at 128.
The Optional County Charter Act allocates to the Freeholder Board ("Board") the responsibility for the adoption of an administrative code. N.J.S.A. 40:41A-125, entitled "Adoption of the administrative code," provides:
a. the board of chosen freeholders shall adopt an administrative code organizing the administration of the county government, setting forth the duties and responsibilities and powers of all county officials and agencies, and the manner of performance needed.
The statute requires any county that has elected a form of government under the Optional County Charter Act to adopt an administrative code within sixty days.
N.J.S.A. 40:41A-125, more specifically paragraph c, recognizes the separation of powers inherent in the Optional County Charter Act and the executive functions assigned to the County Executive. The provision states:
Nothing in the administrative code shall change the duties or powers of county officers whose existence is mandated by the Constitution or shall diminish the duties, responsibilities or powers of any elected or appointed head of the executive branch or chief assistant thereto or county administrator. [N.J.S.A. 40:41A-125c.]
Paragraph c, cited above, is consistent with the separation of powers language set forth in N.J.S.A. 40:41A-86. The last paragraph of that section provides:
It is the intent of this act to confer on the board general legislative and such investigative powers as are germane to the exercise of its legislative powers, but to retain in the head of the executive branch full control over the county administration and over the administration of county services provided for in this act. [Id.]

On January 27, 2000 the Mercer County Board of Chosen Freeholders ("Board") adopted a resolution authorizing the Board to secure the legal services of Hill Wallack, as Special Counsel, to assist the Board in its review and preparation of amendments to the Mercer County Administrative Code ("Code"). Despite some reluctance, Robert D. Prunetti, the County Executive of Mercer County ("County Executive"), signed the contract. See N.J.S.A. 40:41A-36.
On October 12, 2000, the Board approved Ordinance 2000-16, formally adopting the revised Code. Dissatisfied with the scope and breadth of the amendments, and the procedural steps undertaken to adopt the Ordinance, on October 18, 2000, the County Executive vetoed the amended Code. At a special meeting scheduled by the Board on November 9, 2000, the Board unanimously voted to override the veto. See N.J.S.A. 40:41A-41(f). In response, on December 7, 2000 the County Executive filed a complaint in lieu of prerogative writs and an order to show cause without restraints seeking to declare the amended Code (1) preempted by state law; (2) arbitrary, capricious and unreasonable; and (3) in violation of the separation of power provisions set forth in the Optional Charter Act. N.J.S.A. 40:41a-1 et seq.
Subsequent thereto, the Board adopted a resolution to secure the services of Hill Wallack, as Special Counsel, to represent the Board in the complaint filed by the County Executive. Relying on the authority of the County Executive to sign all contracts, set forth in N.J.S.A. 40:41A-36, the County Executive refused to sign the contract.
On January 8, 2001, Hill Wallack filed an answer and counterclaim on behalf of the Board. The counterclaim sought judgment *285 directing the payment of all outstanding fees for services rendered to the Board related to the preparation of the amendments to the Code. Additionally, the Board filed a notice of motion on short notice to compel the County Executive to execute a second contract for the appointment of Hill Wallack as, Special Counsel, to represent the Board in the litigation filed by the County Executive.
Without objection, the court signed orders granting the County Executive of Bergen County, the County Executive of Atlantic County, the County Executive of Essex County and the Bergen County Board of Freeholders permission to appear as amicus curiae in this matter.

I.

THE AUTHORITY OF THE BOARD TO SECURE THE SERVICES OF SPECIAL COUNSEL

Section 2.02.120B
The novel issue presented in this case is one of statutory construction. For the reasons set forth herein, the court finds that the Board does not have the unilateral authority to hire consultants or the unrestricted right to secure the services of Special Counsel.
It is axiomatic that in construing a statute the role of the judiciary is to give effect to the intention of the Legislature. County of Monmouth v. Wissell, 68 N.J. 35, 342 A.2d 199 (1975); Mason v. Civil Serv. Comm'n, 51 N.J. 115, 238 A.2d 161 (1968); Board of Educ. of Asbury Park v. Hoek, 38 N.J. 213, 183 A.2d 633 (1962). Legislative intent may be implied from the language of a statute or inferred on grounds of policy or reasonableness. The historical background is significant when the court attempts to determine the intent of the Legislature. State v. Madden, 61 N.J. 377, 294 A.2d 609 (1972). To ascertain intent, the court may rely on the reports of special committees or commissions appointed to study a particular subject matter. American Fed'n of State, County, & Mun. Employees v. Hudson County Welfare Bd., 141 N.J.Super. 25, 35, 357 A.2d 67 (Ch.Div.1976).
Our review begins with the New Jersey County and Municipal Law Commission, Report on County Government (Second Tentative Draft) ("Revision Report"), issued in September 1962. That report recognized the enhanced role to be played by the county government and noted:
[t]he regional problems of service, planning and development engendered by rapid population growth, redistribution of the population and increased urbanization [f]ocused attention on the need for areas of administration larger than municipal units. Thus, in addition to fulfilling increasing demands as an agent of the State, many new powers, duties and responsibilities of a local nature, usually associated with the governmental tasks of municipal corporations, have been assigned to counties. [Id. at III.]
Consistent with the Revision Report, the New Jersey County and Municipal Government Study Commission ("Commission"), formed pursuant to Chapter 28 of the Laws of 1966, was created to address the "clear trend toward increasing federal and state involvement in many areas of government service and the inability of local government to meet many of the area-wide problems because of inadequate governmental and administrative machinery and because of fiscal [limitations] the inability to develop programs to meet the needs of the community." New Jersey County and Municipal Government Study Commission, County Government: Challenge and Change, 108 (Second Report *286 April 28, 1969) ("Musto Report").[1] During 1966-67, the Commission held special sessions aimed at identifying the general attitudes on the performance of local government in the state. Id. at xxi. The Commission noted:
[W]e do suggest the municipalities cannot long continue to bear the burdens which have brought home rule and our cherished local government system to their present state of crisis. A governmental partnershipa new creative local systemis necessary if we are to succeed in meeting today's problems.
We need a unit of local government at the middle levelone between the state and the federal governments on one hand and the municipality on the other. This unit could be the bulwark of a revitalized local government system in New Jersey. [Id. at xiv.]
Against this backdrop, in enacting the Optional County Charter statute, the legislature intended to effectuate the "middle tier" government unit by modifying a county's organizational structure and expanding its legal authority. Id. at 107-108, 357 A.2d 67.
Such an approach would provide each New Jersey county with flexibility to choose a form of government suited to its characteristics, needs and preference, within a framework of widely accepted principles of government administration; and at the same time it would provide the legal authority enabling the people of the county to make it into the kind of government they want. [Id. at 108, 357 A.2d 67.]
The Musto Report recommended that county government be restructured by the adoption of one of four basic alternative structures: a Board Manager Form, a Strong Elected Executive Form, a Strong Board-Administrator Form and an Elected Supervisor Form. Id. at xixxx.
Board Manager Form ... All elected officials would be equal in stature, but one would serve as ceremonial head of the Board, similar in powers to the Freeholder Director. Such a form would be best suited to a county where there were not sharp distinctions between city and suburb or sharp party competition, but rather a county which was still predominately rural or which was predominantly of one political party.
* * * * * *
Strong Elected Executive Form ... a county executive would be elected as chief executive of the county, like the President of the United States, or the Governor. He would head the county's administration, present a budget message, propose legislative programs and have veto powers over Freeholder Board decisions; the executive would appoint an administrator to assist him. This form would be more appropriate to an urban county with sharp political, social and regional competition.
* * * * * *
Strong Board-Administrator Form ... the Freeholder Board would have more power than under the Board manager form, and the administrator would work under a relatively strong Board president selected by the Freeholders. This form would be most applicable to rural or one-party counties which did not want to place very much authority in the *287 hands of a professional administrative officer or give too much power to an independently elected executive
* * * * * *
Elected Supervisor Form ... the executive would be elected by the voters to head the Board, but he would not be as powerful as the county executive. He would not have the power to present a budget, and he would not be the chief executive of the county administration. Under this plan, both the council and the administrator would be in closer contact and share more power than either or both under the county executive plan. This form would be most useful in developing or suburban areas where social and political differences may exist but are not in sharp or violent focus, as in urban counties. This plan provides for leadership but also provides checks and balances. [Id.]
In enacting the Optional County Charter Plan, the legislature intended to provide each county with the flexibility to choose the form of government best suited to its characteristics, needs and preferences. Shapiro v. Essex County Bd. of Chosen Freeholders, 177 N.J.Super. 87, 424 A.2d 1203 (Law Div.1980), aff'd, 183 N.J.Super. 24, 443 A.2d 219 (App.Div.), aff'd, 91 N.J. 430, 453 A.2d 158 (1982). "The legislative purpose underlying the County Executive plan was to assure the centralized professional administration of county government by vesting in a single elected official the power to administratively direct its operations." Id. at 93, 424 A.2d 1203 (citing the Musto Report at 109).
Mercer County has adopted the County Executive form of government. Pursuant to N.J.S.A. 40:41A-32b, in the County Executive form of government, both the Board and the County Executive constitute the "governing body" of the county. There is a distinct demarcation of authority between the two branches. The County Executive is vested with responsibility for all administrative functions while the Board is the sole legislative body. Musto Report at 95.
The demarcation of these powers, however, has been refined over the years. The original County Executive Plan allocated to the Board the power and authority to appoint the county counsel.
The board of freeholders ... [m]ay appoint the county counsel, to serve at the pleasure of the board. The counsel shall head the county's legal department; [N.J.S.A. 40:41A-41d (1972).]
Subsequently, in 1974, the State legislature amended N.J.S.A. 40:41A-41d to provide:
The board of freeholders ... [s]hall appoint the county counsel, to serve at the pleasure of the board and head the county's legal department; [N.J.S.A. 40:41A-41d (1974).[2]]
The most significant amendment, adopted by the legislature in 1978, makes it clear that the "governing body" of the county includes both the Board and the County Executive.
In each county operating under this article, the term "governing body" of the county shall be construed to include both the board of freeholders and the county executive. For the purposes of the construction of all other applicable statutes, any and all administrative or *288 executive functions heretofore assigned by general law to the board of freeholder shall be exercised by the county executive, and any and all legislative and investigative functions heretofore assigned by general law to the board of freeholders shall be exercised by the board, all in accordance with the separation of powers provided for in [N.J.S.A. 40:41A-86.] [N.J.S.A. 40:41A-32b (1978).]
The 1978 amendments allocated to the County Executive the authority to appoint county counsel:
The county executive ... [w]ith the advise and consent of the board, shall appoint the county counsel, the administrator, the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities; [N.J.S.A. 40:41A-37b (1978).]
At the same time, the 1978 amendments established the authority of the Board to appoint counsel to the Board:
The board of freeholders...[m]ay appoint counsel to the board, if such position is created by the administrative code, to serve at the pleasure of the board; [N.J.S.A. 40:41A-41d (1978).]
The legislative statement appended to the 1978 amendments provided specific comments as to the N.J.S.A. 40:41A-37b and -41d changes.
The purpose of this bill is to clarify certain ambiguities of, and to rectify certain technical deficiencies on the [statute]. These objectives are accomplished by providing:
2. A statement of legislative intent that in those forms of government where the executive officer has veto power over actions of the freeholder board (the county executive plan and the county supervisor plan) the term "governing body" shall be construed to include both the board and the executive office, and that in the construction of all other applicable statues, all administrative and executive functions previously assigned to the board of freeholders shall be exercised by the executive officer, and all legislative and investigative functions previously so assigned shall be exercised by the board;
* * * * * *
5. A provision that, in the case of the county executive plan, the executive shall appoint county counsel to head the county's legal department, and that the board may appoint its own board counsel, if such position is created by the administrative code, which counsel shall not head the county's legal department. [See N.J. Senate Bills 1978: Nos. 980-1079, 1978-1979 Session, Senate Bill 1001 at 11.]
Additionally, the Assembly County Government Committee made the following statement concerning the same amendments:
In those forms of county government in which the executive officer has veto power over the actions of the board of chosen freeholders, a statement of legislative intent has been incorporated to define the term "governing body." In counties which have adopted the county executive plan or the county supervisor plan, the governing body shall include both the board and the executive officer. All administrative and executive functions previously exercised by the board in such counties are assigned to the executive officer, while legislative and investigatory power is granted to the board.... In the case of those counties which have adopted the county executive plan, the county executive is granted the right to appoint the county counsel to head the county legal department *289 and grants the board the permissive right to appoint its own counsel if that position is created by the administrative code. [Id. Assembly County Government Committee Statement at 1.]
Importantly, the statute established standards and procedures applicable to all optional charter plans. In the section entitled "Relations Between the Legislative and Executive Branches," N.J.S.A. 40:41A-86, "Separation of powers", provides:
In any county that shall have adopted a charter under this act, the board of chosen freeholders shall deal with county employees only through ... the county executive....
Nothing in this act shall be construed to prohibit the board's inquiry into any act or problem of the county's administration. Any freeholder may require a report on any aspect of the government of the county at any time by making a written request to the head of the executive branch of county government. The board may, by majority vote of the whole number of its members, require the head of the executive branch to appear before the board sitting as a committee of the whole, and to bring before the board such records and reports, and such officials and employees of the county as the board shall deem necessary to insure clarification of the matter under study.
The board further may, by majority vote of the whole number of its members, delegate any number of its members as an ad hoc committee to consult with the head of the executive branch to study any matter and to report to the board thereon.
It is the intent of this act to confer on the board general legislative and such investigative powers as are germane to the exercise of its legislative powers, but to retain in the head of the executive branch full control over the county administration and over the administration of county services provided for in this act.
Under the County Executive form of government specific powers are delegated to the Board. More specifically, N.J.S.A. 40:41A-41d provides that the Board "may appoint counsel to the board, if such position is created by the administrative code, to serve at the pleasure of the Board. Consistent with N.J.S.A. 40:41A-41d, the Mercer County Administrative Code, section 2.01.120 provides for the appointment of the Board counsel. The Code provides:
A. There shall be Counsel to the Board who shall be appointed by the Board to serve at its pleasure. Counsel to the Board shall advise the Board on legal matters pertinent to Board functions and duties. As required by the Board, he/she shall prepare resolutions and ordinances for the Board, review negotiated contracts prior to Board approval, represent the Board in any litigation or dispute with the Executive Branch, represent the Board in any appeals from the Planning Board, and act, if so designated by the President, as parliamentarian at Board meetings.
B. Within available appropriations, the Board may appoint and remove Special Counsel to the Board to aid in the preparation, trial or argument of cases, or to assist the Board in such matters as may come before it in the discharge of its legislative and investigative duties where such cases or matters require special expertise, or where Counsel to the Board is or may be disqualified, or where Counsel to the Board is unavailable because of the demands of other duties assigned to him.
[(Emphasis added); See also, Tr. of Order to Show Cause Hr'g in Aus Consultants *290 Inc. v. Mercer County Bd. of Chosen Freeholders, Docket No. MER-L-2122-97 at 42 (April 1, 1999).]
It is undisputed that at its organization meeting on January 2, 2001, the Board appointed Arthur R. Sypek, Jr., as counsel to the Board, pursuant to N.J.S.A. 40:41A-41d. The role of the Board counsel, as detailed in Section 2.01.120A of the Code is described as follows:
There shall be counsel to the Board who shall be appointed by the Board to serve at its pleasure. Counsel to the Board shall advise the Board on legal matters pertinent to Board functions and duties. As required by the Board; he/she shall prepare resolutions and ordinances for the Board, review negotiated contracts prior to Board approval, represent the Board in any litigation or dispute with the Executive Branch, represent the Board in any appeals from the planning board, and act, if so designated by the Chair, as parliamentarian at Board meetings. [ (Emphasis added).]
The code specifically delegates to counsel to the Board the responsibility to represent the Board in any litigation or dispute with the Executive Branch. By inserting this provision, the governing body made it abundantly clear that Board counsel represents the Board in any and all litigation or disputes with the Executive Branch. The limited function of the Board counsel, as specified in the Code, is to address matters of this precise nature. To allow the unrestricted appointment of Special Counsel to, in essence, perform the duties of the Board counsel would be tantamount to granting the Board hiring authority far in excess of what is provided for by statute. Therefore, the Board may not negotiate a contract for services of any kind, adopt a resolution, and then require that the County Executive sign the contract and expend county funds.
Section 2.02.120B of the Code permits the Board to appoint Special Counsel to
aid in the preparation, trial or argument of cases, or to assist the Board in such matters as may come before it in the discharge of its legislative and investigative duties where such cases or matters require special expertise, or where Counsel to the Board is or may be disqualified, or where Counsel to the Board is unavailable because of the demands of other duties assigned to him.
The Board cites the transcript of the April 1, 1999 oral argument in AUS Consultants Inc. v. Mercer County Bd. of Chosen Freeholders, MER-L-2122-97, for the proposition that the appointment of Special Counsel is appropriate in this case. Reliance on AUS Consultants is misplaced. In AUS Consultants, the court authorized the Board to secure the services of Special Counsel due to the disqualification of Arthur Sypek, Board Counsel. In the case at bar, no disqualification or extraordinary circumstances have been asserted by the Board. The interpretation by the Board, that it has the authority, absent special or extraordinary circumstances, to appoint Special Counsel is overly broad and impermissibly expands the powers granted to the Board by statute.
Finally, the Board misconstrues N.J.S.A. 40:41A-36f as standing for the proposition that the execution of contracts by the County Executive is a ministerial function. The statute, in pertinent part, provides that the "executive power of the county shall be exercised by the County Executive." N.J.S.A. 40:41A-36. Importantly, this power extends to negotiating contracts for the county subject to board approval and the signing of all contracts, bonds or other instruments requiring the consent of the county. Id. The statute does not require the County Executive to either negotiate or sign contracts. As the *291 chief administrative official, the County Executive is charged with the responsibility of exercising his discretion when acting in an official capacity.
The Optional County Charter statute specifically outlines the powers and duties to be exercised by the County Executive. The statute provides, in pertinent part:
The executive power of the county shall be exercised by the county executive. He shall:
* * * * * *
f. Sign all contracts, bonds or other instruments requiring the consent of the county;
* * * * * *
i. Negotiate contracts for the county subject to board approval....;
* * * * * *
j. Assure that all terms and conditions, imposed in favor of the county or its inhabitants in any statute, franchise or other contract, are faithfully kept and performed; [N.J.S.A. 40:41A-36.]
Similarly, the powers and duties allocated to the Board include "[a]pproval of contracts presented by the county executive." [N.J.S.A. 40:41A-38n.]
The legislature contemplated the cooperation between the two branches of government in meeting the needs of the community. The County Executive form of government is unique and is different from the more familiar constitutional models that have distinct, independent branches. In order to take any official action or in any way bind the county, both the County Executive and the Board must participate meaningfully in the process. There is simply no authority for the proposition that the Board may negotiate and enter into contracts.
There are no reported cases that address the authority of the Board to appoint Special Counsel in the County Executive form of government. There is, however, at least reference to the authority of the Board to appoint Special Counsel under the Freeholder form of government. See Pillsbury v. Monmouth County Bd. of Chosen Freeholders, 133 N.J.Super. 526, 337 A.2d 632 (Law Div.1975), aff'd, 140 N.J.Super. 410, 356 A.2d 424 (App.Div. 1976). Despite the differences between the Freeholder form of government and the County Executive form of government, the analysis as to the appointment of counsel should be the same.
In Pillsbury, the court considered the attempt by the Board to appoint Special Counsel for the purpose of performing many of the duties of the sitting County Counsel. It should be noted that in the Freeholder form of government, the Board appointed County Counsel and there was no statutory Board Counsel. In deciding the issue, the Court noted that:
[U]nder appropriate circumstances a board may even appoint special counsel for specific and probably extraordinary legal matters. But, as stated, this authority is circumscribed in that it may not be done as a guise to obscure the real intention to strip the duly and regularly appointed counsel of his power and responsibilities as counsel. [Id. at 537, 337 A.2d 632.]
By analogy, the Board in Pillsbury had the authority to appoint the County Counsel, similar to the authority of the Board in this case to appoint Board Counsel. In addressing the appointment of Special Counsel, the court restricted this authority to specific and extraordinary legal matters. Moreover, the court cautioned that such measures may not be undertaken for the purpose of undermining the appointed powers of the County Counsel. Id.
*292 Section 2.01.120 of the Code, in pertinent part, provides that Counsel to the Board shall "represent the Board in any litigation or dispute with the Executive Branch." In the case at bar, the Board has not presented any specific or extraordinary circumstances to support the appointment of Special Counsel. A different conclusion might be warranted if the Board did not avail itself of the right to appoint Board Counsel, if the duly appointed Board Counsel was disqualified from appearing in the case and the Board was confronted with the prospect of defending this litigation without the benefit of counsel, or the substantive issues were so complex that a reasonably competent practitioner would be unable to proceed in the matter. The primary function of the Board Counsel, however, is to advise the Board on matters involving the separation of powers between the County Executive and the Board.
The concept of "governing body" for purposes of the County Executive form of government is addressed and defined in N.J.S.A. 40:41A-32b as follows:
In each county operating under this article, the term "governing body" of the county shall be construed to include both the board of freeholders and the county executive. For the purposes of the construction of all other applicable statutes, any and all administrative or executive functions heretofore assigned by general law to the board of freeholders shall be exercised by the county executive, and any and all legislative and investigative functions heretofore assigned by general law to the board of freeholders shall be exercised by the board, all in accordance with the separation of powers provided for in [N.J.S.A. 40:41A-86].
"General Law" is defined as any law that:
a. Is not inconsistent with this act; and
b. Is by its terms applicable to or available to all counties, or;
c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare. [N.J.S.A. 40:41A-26.]
The Local Public Contracts Law ("LPCL") governs the authority of a municipality or county to negotiate and execute contracts. N.J.S.A. 40A:11-1 et seq. The LPCL contains the following definitions:
"Contracting Unit" means any county, municipality, or local autonomous body. [N.J.S.A. 40A:11-2.]
"Governing Body" means the "governing body of the county, when the purchase is to be made or the contract is to be entered into by, or on behalf of, a county." [N.J.S.A. 40A-11-2(2)(a).]
"Contracting Agent" means the "governing body of a contracting unit, or its authorized designee...." [N.J.S.A. 40A:11-2(3).]
As noted heretofore, the County Executive form of government provides that the term "governing body of the county shall be construed to include both the board of freeholders and the county executive." N.J.S.A. 40:41A-32.
The LPCL outlines the procedures for the award of a professional services contract and, in pertinent part, provides:
[a]ny contract the amount of which exceeds the bid threshold, may be negotiated and awarded by the governing body without public advertising for bids and bidding therefor and shall be awarded by resolution of the governing body if... the subject matter thereof consists *293 of ... professional services. [N.J.S.A. 40A:11-5.]
Further support for the notion that only the governing body, and not the Board acting independently, can enter into contracts of behalf of the County is found in the legislative history of the LPCL, particularly in the 1983 amendments adopted as P.L.1983, c. 331. The Senate and Municipal Government Study Commission's Statement appended to the Bill, as reprinted under N.J.S.A. 40A:11-2, states that:
Under the provisions of the "Local Public Contracts Law," local governing bodies are permitted to make, negotiate and award contracts for "professional" and "extraordinary unspecifiable" services without public bidding. [ (Emphasis added).]
Significantly, the Historical and Statutory Notes for the 1983 legislation, notes that "[t]he 1983 amendment substituted "governing body" for "board of chosen freeholders" in subsection (2)(a)."
When a contract is entered into on behalf of a county, as opposed to one of the other entities enumerated in N.J.S.A. 40A:11-2(1), it is the "governing body" which is empowered to act. N.J.S.A. 40A:11-2(2)(a). For purposes of the County Executive form of government, "governing body" includes both the County Executive and the Board. N.J.S.A. 40:41A-32b further delineates these branches, assigning administrative and executive functions to the County Executive and legislative and investigative functions to the Board. One of the administrative functions delegated to the County Executive under the Optional County Charter Act is the authority to negotiate and sign contracts on behalf of the County. N.J.S.A. 40:41A-36i.
The legislative provisions set forth above establish that public contracts may only be entered into on behalf of the County, and not the Board or the Executive as individual components thereof. The LPCL has embraced the concept of "governing body" as embodied in the Optional County Charter Act by including this term in its definitional section.
Despite the absence of a reported decision concerning the authority of a Board to enter into contracts in the County Executive form of government, New Jersey courts have considered the parameters of a local governmental entity's ability to undertake actions, including the right to contract. In Giannone v. Carlin, 20 N.J. 511, 517, 120 A.2d 449 (1956), the New Jersey Supreme Court held:
A municipal government is a government of enumerated powers acting by a delegated authority; it has no inherent jurisdiction to make laws or adopt regulations of government.
Any exercise of a delegated power by a municipality in a manner not within the purview of the governing statute is capricious and ultra vires of the delegated powers. [ (Citations omitted).]
While Giannone did not involve a contract, its principle was subsequently applied and cited in a case involving a municipal contract dispute. In Midtown Properties Inc. v. Township of Madison, 68 N.J.Super. 197, 207-208, 172 A.2d 40 (Law Div.1961), aff'd, 78 N.J.Super. 471, 189 A.2d 226 (App.Div.1963), the court held:
A municipality in exercising the power delegated to it must act within such delegated power and cannot go beyond it. Where the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure. [ (Citations omitted).]
*294 In a later Appellate Division case concerning a county's ability to contract, the court reiterated that "[a]lthough a public body may make contracts, it can only do so within its express or implied authority." Sinclair Refining Co. v. County of Bergen, 103 N.J.Super. 426, 433, 247 A.2d 484 (App.Div.1968), cert. denied, 53 N.J. 272, 250 A.2d 136 (1969) (citations omitted).
The Optional County Charter Act and the LPCL make it abundantly clear that only the governing body, consisting of the County Executive and the Board with duties divided along administrative and legislative lines, can legally bind the County to contracts.
The Board cites Gibson v. Board of Education of Newark, 205 N.J.Super. 48, 500 A.2d 27 (App.Div.1985) and Hiering v. Township of Jackson, 248 N.J.Super. 37, 589 A.2d 1373 (Law Div.1990), aff'd, 248 N.J.Super. 9, 589 A.2d 1357 (App.Div. 1991), for the proposition that the Board is authorized to hire special consultants to represent it in disputes with County Executive. In Gibson, the legislature created the office of executive superintendent exclusively responsible for the day-to-day educational, fiscal and operational activities of the district and the concomitant allocation to the Newark Board of Education of a role limited to policymaking. See N.J.S.A. 18A-17A-3 and -7. Reliance on Gibson, however, is misplaced. In Gibson, unlike the case at bar, the Newark Board of Education did not have the authority to appoint Counsel to the Board. Therefore, the Appellate Division held that the Board of Education was "entitled to retain counsel of its own choosing to advise it and to conduct any ensuing litigation." Gibson, supra, 205 N.J.Super. at 56, 500 A.2d 27. Similarly, in Hiering, the court held that "the township which ha[d] executed an agreement to employ an attorney for a four year term pursuant to a statute authorizing a four year appointment [could] terminate attorney's services before the end of the four year term when that statute has been repealed and replaced by a statute providing for a one year term," even if the employment contract was executed in writing. Hiering, supra, 248 N.J.Super. at 38, 589 A.2d 1373. Neither decision is surprising in light of the facts and circumstances.
The relief the Board seeks is most closely analogous to a mandamus-an order commanding the County Executive to execute the contract for the appointment of Special Counsel. Mandamus is a proper remedy "(1) to compel specific action when the duty is ministerial and wholly free from doubt, and (2) to compel the exercise of discretion, but not in a specific manner." Loigman v. Township Comm. of Middletown, 297 N.J.Super. 287, 299, 687 A.2d 1091 (App.Div.1997) (citations omitted). "[T]he cognizability of such a claim at the trial level is limited to where the inaction complained of is the nonperformance of mandated ministerial obligation." Cohen v. Board of Tr. of the Univ. of Med. & Dentistry of N.J., 240 N.J.Super. 188, 199, 572 A.2d 1191 (Ch. Div.1989) (citing Equitable Life Mortgage v. New Jersey Div. of Taxation, 151 N.J.Super. 232, 238, 376 A.2d 966 (App. Div.), cert. denied, 75 N.J. 535, 384 A.2d 514 (1977)). Therefore, the question in this case is whether the alleged refusal by the County Executive to execute the contract to appoint Special Counsel amounts to the "nonperformance of a mandated ministerial obligation." A ministerial act or duty is defined as one which
[I]s absolutely certain and imperative, involving merely the execution of a set task, and the law which imposes it prescribes and defines the time, mode and occasion of its performance which such *295 certainty that nothing remains for judgment or discretion.
[Cohen, supra, 240 N.J.Super. at 199-200, 572 A.2d 1191 (citing Ivy Hill Park v. Property Liability Ins. Guar. Ass'n, 221 N.J.Super. 131, 140, 534 A.2d 35 (App.Div.1987), cert. denied, 110 N.J. 188, 540 A.2d 183 (1988) (citations omitted)).]
Simply put, a mandamus is an order compelling specific action when the duty is ministerial and wholly free from doubt. Further, our Supreme Court has held that "[w]here there is an omission to do what the law clearly and unmistakably directs as an absolute duty, mandamus is an appropriate remedy." Reid Dev. Corp. v. Parsippany-Troy Hills Township, 10 N.J. 229, 237, 89 A.2d 667 (1952). Although in certain circumstances the power to issue mandamus authorizes the judicial branch to direct a State administrative agency to take action, the actions that may be compelled are limited to those that are purely ministerial and involve no exercise of discretion. Switz v. Middletown Township, 23 N.J. 580, 588-89, 130 A.2d 15 (1957). A determination of the resources to be devoted to enforcement and the manner of enforcement clearly involves an exercise of the agency's discretion. Consequently, an order directing such an outcome would violate the separation of powers created by the New Jersey Constitution, which provides:
The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution. [N.J. Const. art. III, ¶ 1.]
The limitation of the use of mandamus as a tool to compel the performance of ministerial duties is intended to protect the separation of powers created by Article 3, paragraph 1 of the New Jersey Constitution. See Ironbound Health Rights Advisory Comm'n v. Diamond Shamrock Chem. Co., 216 N.J.Super. 166, 175, 523 A.2d 250 (App.Div.1987). As the Ironbound Health decision points out, a citizens' suit to control an agency's exercise of discretion would violate the doctrine of separation of powers among the various branches of government, created by Article 3, paragraph 1 of the New Jersey Constitution. This doctrine "is aimed at preventing one branch of government from claiming power reserved to another and at avoiding the exercise of inordinate power by a single arm of government." Id. at 175, 523 A.2d 250 (citing Township of Mt. Laurel v. Department of Public Advocate of N.J., 83 N.J. 522, 416 A.2d 886 (1980)). Although recognizing that occasionally the line separating the functions of the various branches of government can become blurred, the Appellate Division found that "it is nevertheless clear that a judicial order compelling the executive to take discretionary action would violate the separation of powers." Id. at 176, 523 A.2d 250. Thus, although the Executive Order did direct action by the Commissioner, the nature and extent of the action was a question for the discretion of the Commissioner. Id.
For all of the reasons set forth herein, the application by the Board to require the County Executive to execute the aforementioned contract is denied.[3]
*296 II.

THE APPOINTMENT OF AN AUDITOR

Section 2.01.010R
Section 2.01.010, entitled "Legislative Authority," provides that "[t]he legislative power of the county shall be vested in the board of chosen freeholders." The County Executive asserts that section 2.01.010(R) improperly allocates to the Board the authority to appoint a municipal accountant. Section 2.01.010R provides that the Board may:
[a]ppoint annually a registered municipal accountant of New Jersey to perform an independent audit of the county's books, accounts and financial transactions pursuant to N.J.S.A. 40A:5-4. [Code § 2.01.010R.].
In opposing the insertion of the aforementioned provision, the County Executive relies on the broad fiscal and budgetary authority assigned to the County Executive pursuant to the Optional County Charter Act. See N.J.S.A. 40:41A-36 (b)(e)(g) and (h).
The Local Fiscal Affairs Law mandates that the governing body of each county appoint a registered municipal accountant. See 40A:5-1 et seq. More specifically, N.J.S.A. 40A:5-4 requires an annual audit and, in pertinent part, provides:
The governing body of every local unit shall cause an annual audit of its books, accounts and financial transactions to be made and completed within six months after the close of its fiscal year. The governing body of every local unit may by resolution petition the Director of the Division of Local Government Services in the Department of Community Affairs for an extension to complete and file the annual audit with the division....
The governing body of every local unit shall employ a registered municipal accountant of New Jersey to prepare its annual audit or it shall enter into an agreement with the Director of the Division of Local Government Services for an annual audit to be made by qualified employees of the division [ (Emphasis added) ]....
The term "governing body" is defined by the Local Fiscal Affairs Law as "the governing body of a county or the commission, council, board or body having control of the finances of a municipality or any other local unit as defined herein." N.J.S.A. 40A:5-2 (emphasis added).
The concept of "governing body" for purposes of the County Executive form of government is addressed and defined in the 1978 amendment to N.J.S.A. 40:41A-32b, which provides:
In each county operating under this article, the term "governing body" of the county shall be construed to include both the board of freeholders and the county executive. For the purposes of the construction of all other applicable statutes, any and all administrative or executive functions heretofore assigned by general law to the board of freeholders shall be exercised by the county executive, and any and all legislative and investigative functions heretofore assigned by general law to the board of freeholders shall be exercised by the board, all in accordance with the separation of powers provided for in [N.J.S.A. 40:41A-86]. [(Emphasis added) ].
Despite the collective reference of the County Executive and the Board as the "governing body," the duties and responsibilities of each branch of government are set forth in detail in the Optional County Charter Plan. Therefore, an analysis of which branch of government is vested with the authority to appoint the municipal *297 auditor must begin with review of the specific statutory authority assigned to each branch of government pursuant to the Optional County Charter Plan.
N.J.S.A. 40:41A-36 entitled duties of the County Executive, more specifically paragraphs (b)(e)(g) and (h) allocate to the County Executive control and authority over the budget.
(b) Prepare and submit to the board for its consideration and adoption an annual operating budget and a capital budget, establish the schedules and procedures to be followed by all county departments, offices and agencies in connection therewith, and supervise and administer all phases of the budgetary process.
(e) Supervise the collection of revenues, audit and control all disbursements and expenditures and prepare a complete account of all expenditures.
(g) Review, analyze and forecast trends of county services and finance programs of all boards, commissions and agencies and other county bodies, and report and recommend thereon to the board.
(h) Develop, install and maintain centralized budgeting, personnel and purchasing procedures as may be authorized by the administrative code.
The aforementioned provisions allocate to the County Executive broad fiscal and administrative authority related to the preparation and submission of the annual operating and capital budget.
Contrary to the expansive authority set forth above, the fiscal and budgetary duties and powers of the board of freeholders are limited to the approval of contracts presented to the county executive, set forth in N.J.S.A. 40:41A-38(n) and the approval of the annual operating and capital budgets pursuant to the Local Budget Law, as set forth in N.J.S.A. 40:41A-41(g).
Additionally, the Optional County Charter Plan provides that "[t]he County Executive... [w]ith the advice and consent of the board, shall appoint the county counsel, the administrator, the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities." N.J.S.A. 40:41A-37b. Consistent with this provision, the registered municipal auditor falls within the statutory appointment powers enumerated above.
This court is satisfied that the specific statutory provisions set forth above, establish a clear and specific legislative intent to vest with the County Executive the authority to appoint the registered municipal accountant.
Additionally, the court is satisfied that the authority to appoint a registered municipal auditor is an administrative function. As noted heretofore, The Optional County Charter Plan, in pertinent part provides:
For the purpose of the construction of all other applicable statutes, any and all administrative or executive functions heretofore assigned by general law to the board of freeholders shall be exercised by the county executive. [N.J.S.A. 40:41A-32.]
It is the intent of this act to confer on the board general legislative and investigative powers as are germane to the exercise of legislative powers, but to retain in the head of the executive branch full control over the county administration and over the administration of county services provided for in this act. [N.J.S.A. 40:41A-86.]
"This division of labor resulted from the realization that the administrative burdens confronting freeholder boards seriously inhibited their ability to set priorities and formulate policies." Shapiro v. Essex County Freeholders Bd., 177 N.J.Super. *298 87, 95, 424 A.2d 1203 (Law Div.1980), aff'd, 183 N.J.Super. 24, 443 A.2d 219 (App.Div.), aff'd, 91 N.J. 430, 453 A.2d 158 (1982).
In Shapiro, the Appellate Division established a test to apply when distinguishing between administrative and legislative functions in a case that dealt with whether the setting of salaries for county personnel was an administrative or a legislative function of local government. The court held:
Matters of a permanent or general character are considered legislative, while acts which are temporary or routine are considered to be administrative. An act which states a rule of conduct or a course of policy is purely legislative in character. Acts performed by an executive to effectuate policies of the Legislature are considered administrative in nature. [Ibid. (citations omitted) ].
Interestingly, in an unpublished opinion, Paul Levy, J.S.C. (retired), relying on the language of N.J.S.A. 40:41A-32, held that the County Executive and, not the board of freeholders, had the authority to appoint a municipal auditor.[4] The court found that the 1978 amendment to the statute sought to divide power between the Freeholder Board and Executive and to give the latter "executive or administrative" powers.[5] The court analyzed the duties and powers of each branch of government and concluded that the County Executive was responsible for "[s]upervis[ing] the collection of revenues, audit and control of all disbursements and expenditures and [to] prepare a complete account of all expenditures." Id. at 10 (quoting N.J.S.A. 40:41A-36e.) Additionally, the court noted that the Optional County Plan allocated the authority to negotiate contracts for the county, subject to the board approval, to the County Executive. Id. See N.J.S.A. 40:41A-36(i).
Judge Levy concluded that the appointment of a registered municipal auditor was an administrative function. The court stated:
And it is not as urged by the plaintiffs, some sort of a balance or check on another form of Government. And, therefore, an investigative or Legislative function which should be allocated to the Board of Freeholders....
It appears to me that in addition to that function, the function of the auditing at the end of the year, all the financial affairs of the Municipal Government is also to be the function of the county executive.
Furthermore, if the Freeholders want to check up on the county executive, they first, I believe, have the right to approve the auditor he selects under N.J.S.A. 40:41-36i, and in addition, N.J.S.A. 40:5-9 requires that the auditor be a registered municipal accountant of New Jersey, and 40:5-4 says it could also be a qualified State employee, qualified *299 meaning it has to be registered as a municipal accountant.
...Even if the Board thinks he has [manipulated the auditor], he has other remedies, specifically, N.J.S.A. 40:41A-86, that gives it certain powers of investigation and it can cause an investigation to be made and require employees to come before it and records to come before it. Id. (citing Cuprowski v. Jersey City, 101 N.J.Super. 15, 242 A.2d 873 (Law Div.1968)).
In the final analysis, the court concluded that the appointment of a municipal auditor was an administrative function allocated under the Optional County Charter Plan to the County Executive.
In the case at bar, the court concurs with the comprehensive and thoughtful decision by Judge Levy. The statute needs no interpretation; it is clear and unambiguous. The legislature specifically divided the powers of government, giving the County Executive the administrative powers and the Board legislative and investigative powers. Additionally, the statute directs the county executive to appoint various staff members and "the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities," with the advice and consent of the Board. N.J.S.A. 40:41A-37b. The statute further provides the County Executive's specific duties, including the financial management of the County and to negotiate all county contracts. Thus, it is readily apparent that the appointment to the position of municipal auditor, pursuant to N.J.S.A. 40A:5-4, to be an executive and administrative function of the County Executive.
The provisions set forth in Section 3.01.80 of the Code are equally inappropriate. Section 3.01.80, in pertinent part, provides:
A. The Board declares an intention that the county rotate the County Auditor every three years by seeking competitive proposals from at least eight qualified firms, who possess on staff a registered municipal accountant. To ensure implementation of this rotation policy a proposal should be sought from the existing auditor, even if new proposals result in a higher bid than the existing cost.
The regulation of professional service contracts is governed by N.J.S.A. 40A:11-5(1)(a)(i). Importantly, this section excludes professional service contracts from the competitive bidding requirements set forth in N.J.S.A. 40A:11-3. While the Board is free to exercise its discretion to reject any contracts for a registered municipal accountant, it may not superimpose legal requirements on the appointment power of the County Executive outside those enacted by the Legislature.[6]
For all of the reasons set forth herein, Sections 2.01.010R and 3.01.080A are null and void.

III.

BOARD SUBPOENA POWER

Section 2.01.010S
Next, the County Executive challenges the authority of the board to issue subpoenas *300 to compel the attendance of witnesses and records. Section 2.01.010S, in pertinent part, provides that the Board may:
[c]onduct such investigations as are germane to the exercise of its legislative and budgetary powers under this code and as otherwise authorized by law, including the power to administer oaths and issue subpoenas to compel the attendance of witnesses and the production of relevant evidence as is provided in the Charter, in the County and Municipal Investigations Law (N.J.S.A. 2A:67-1 et seq.) and in other general law, pursuant to N.J.S.A. 40:20-83. [Code § 2.01.010S.]
While the Board submits that the Code is consistent with statutory powers to conduct investigations, the County Executive asserts that the provision is a major deviation from, and expansion of, the powers expressly granted by the Legislature.
Both the United States Supreme Court and the Supreme Court of New Jersey have recognized that a legislative body has the inherent authority to issue subpoenas to fulfill its legislative and investigative authority. See McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580 (1927); In re Shain, 92 N.J. 524, 457 A.2d 828 (1983). As a creature of the legislature, however, it has been held that a county government has no more power other than that delegated to it by the State. Shapiro, supra, 177 N.J.Super. at 98-99, 424 A.2d 1203. Therefore, the first inquiry is whether the legislature has granted subpoena powers to County Boards of Chosen Freeholders.
N.J.S.A. 2A:67A-1 entitled the "County and Municipal Investigations Law," provides:
Whenever a municipal or county governing body is authorized or required to conduct any hearing or investigation, take testimony or make any determination affecting the rights, property, or obligations of any person, it may proceed in accordance with the act.
The authority to conduct a hearing or investigation includes the "power to administer oaths and to examine witnesses subject to penalties." See N.J.S.A. 2A:67-2.
Consistent with the authority set forth above, N.J.S.A. 2A:67-3, in pertinent part, provides:
Any such officer, board, commission, committee or body authorized by law to exercise the power to subpoena may by its subpoena power compel the attendance and testimony of witnesses and the production of books, papers, documents or tangible things related to any matter or subject within its powers or inquiry.
The court has held, however, that N.J.S.A. 2A:67A-3 does not in and of itself grant the power to subpoena. City of Newark v. Benjamin, 144 N.J.Super. 58, 72, 364 A.2d 563 (Ch.Div.1976). Such power must be issued pursuant to constitutional and legislative authority. In re Shain, 92 N.J. 524, 532, 457 A.2d 828 (1983). "[S]uch authority may be fairly implied from the legislative scheme without being expressly stated within the four corners of a statute." Id.

With regard to county government, N.J.S.A. 40:20-1.3(a) provides that the "board of chosen freeholders may adopt an administrative code organizing the administration of the county governing, setting forth the duties and responsibilities and powers of all county officials, agencies, and the manner of performance needed." Consistent with its authority to conduct investigations, as set forth in N.J.S.A. 40:20-82, the board of chosen freeholders may issue subpoenas. N.J.S.A. 40:20-83, provides:
The board of chosen and any committee thereof may subpoena witnesses and take testimony with respect to any lawful matter of inquiry by such board or *301 committee. Any such subpoena shall be enforceable, and misconduct of a witness may be dealt with, in the manner provided by the County and Municipal Investigations Law. [N.J.S.A. 40:20-83 (emphasis added).]
The aforementioned legislative provisions establish that the board of chosen freeholders is authorized to conduct hearings and investigations, take testimony with regard to any lawful manner and issue subpoenas to compel the production of witnesses and documents.
The second inquiry is the impact, if any, of the adoption of the County Executive Plan, pursuant to the Optional County Charter Plan, by the County of Mercer, on the specific legislative grant of subpoena powers to the Board, as set forth above. For the following reasons, this court finds that the Board retains its subpoena powers subject to the limitations set forth in N.J.S.A. 40:41A-86.
The Optional County Charter Plan sets forth the specific operational plan of county government upon the adoption of an alternate form of government. N.J.S.A. 40:41A-25, in pertinent part, provides:
[T]he county shall thereafter be governed by the plan adopted, by the provisions of this law applicable to all optional plans, and by all general laws, subject to the transitional provisions in Article 7 of this act.[7]
The Optional County Charter Plan creates a County Executive Plan, a County Manager Plan, a County Supervisor Plan and a Board President Plan. The provisions applicable to all plans are set forth in detail in N.J.S.A. 40:41A-86 through N.J.S.A. 40:41A-149.
The reference to general laws, set forth in N.J.S.A. 40:41A-25, under the Optional County Charter is defined as follows:
For the purposes of this acts, a `general law' shall be deemed to be such law of part thereof, heretofore or hereafter enacted, that:
(a) Is not inconsistent with this act; and
(b) Is by its terms applicable to or available to all counties, or;
(c) Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare. [N.J.S.A. 40:41A-26.]
Moreover, any county powers must be "consistent with the New Jersey Constitution and with general law relating to local government." N.J.S.A. 40:41A-30.
Each of the four alternative plans, mentioned heretofore, define the duties and powers of the Executive and Legislative branches of government. Interestingly, each of the four plans allocate to the freeholder board the authority to conduct an inquiry or investigation pursuant to section 86 of such an act (C. 40:41A-86.) The County Executive plan, more specifically N.J.S.A. 40:41A-38(b) provides that the Board is vested with the authority "conduct [a]n inquiry or investigation pursuant to such act (C.40:41A-86)." All four plans include the same language to describe the authority of the board to exercise authority to conduct investigations.
Article 7 of the Optional County Charter Plan sets forth the provisions applicable to all of the plans. See N.J.S.A. 40:41A-86 through 149. The first provision in Article 7, entitled "Relations between the Legislative and Executive branches, sets forth the separation of powers. In pertinent part, N.J.S.A. 40:41A-86 provides:

*302 In any county that shall have adopted a charter under this act, the board of chosen freeholders shall deal with county employees only through ... the county executive.... All contact with county employees, all actions and communications concerning the administration of the county's government and provision of services, shall be through the aforementioned officials, except as otherwise provided in this act.

Nothing in this act shall be construed to prohibit the board's inquiry into any act or problem of the county's administration. Any freeholder may require a report on any aspect of the government of the county at any time by making a written request to the head of the executive branch of county government. The board may, by majority vote of the whole number of its members, require the head of the executive branch to appear before the board sitting as a committee of the whole, and to bring before the board such records and reports, and such officials and employees of the county as the board shall deem necessary to insure clarification of the matter under study.

The board further may, by majority vote of the whole number of its members, delegate any number of its members as an ad hoc committee to consult with the head of the executive branch to study any matter and to report to the board thereon.
It is the intent of this act to confer on the board general legislative and such investigative powers as are germane to the exercise of its legislative powers, but to retain in the head of the executive branch full control over the county administration and over the administration of county services provided for in this act. [N.J.S.A. 40:41A-86 (emphasis added).]
This court is satisfied that the Board retains its power to issue subpoenas under the Optional County Charter plan, subject to the specific limitations required by provisions of N.J.S.A. 40:41A-86. The court rejects the notion that the Optional Charter Law provisions are inconsistent with the power of the Board to issue subpoenas as part of its authority to conduct hearings or investigations. To support this position, the County Executive relies on Benjamin. This reliance, however, is misplaced.
In Benjamin, the court addressed whether a municipal board had the authority to first create a civilian board to review police conduct, and then confer subpoena powers to said civilian board. Id. at 64-64, 364 A.2d 563. The municipal board asserted that N.J.S.A. 2A:67A-1 et seq. authorized municipal bodies to issue subpoenas. The court disagreed, stating, "[e]very instance in which subpoenas may be issued in this State is one in which the basic authority comes from a statute." The court specifically cited N.J.S.A. 40:48-25 as granting subpoena powers to a municipal investigating body. The court denied, however, that a municipality could create subpoena power and then confer it upon a civilian committee. Id. at 72, 364 A.2d 563.
This is not the issue before this court. In the case at bar, the issue is whether the New Jersey legislature has granted the County Board of Chosen Freeholders the power to issue subpoenas. In a case involving a newly elected mayor who named an officer of the police department to the Acting Police Director's position, creating a political conflict between the mayor and the city council, the Court held that the power to compel testimony is inherent in the legislative power to investigate. See In re Shain, supra, 92 N.J. at 530, 457 A.2d 828.
*303 In Shain, the City Council established a special investigatory committee comprised of the entire Council to investigate allegations that the new Acting Police Director had interfered with the duties of the Chief of Police. The special committee subpoenaed several police officers to testify at in camera meetings. The mayor responded by issuing an executive order prohibiting any police department member from testifying. Id. at 527-28, 457 A.2d 828.
The Court first addressed the power to investigate, recognizing "the need validity of investigations designed to facilitate the proper exercise of the legislative function." Id. at 531, 457 A.2d 828 (quoting Eggers v. Kenny, 15 N.J. 107, 117, 104 A.2d 10 (1954)). Moreover, the Court found that the legislature specifically provided the city council the power to investigate. Id. The court further clarified that "[n]o specific statutory grant is necessary to vest a legislative body with subpoena power," but instead could be implied from the legislative scheme. Id. at 532, 457 A.2d 828. In support of this principal, the court relied on the United States Supreme Court's rational in McGrain:
A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite informationwhich not infrequently is truerecourse must be had to others who do possess it. Experience has taught that mere requests for such information often are unavailing, and also that information which is volunteered is not always accurate or complete; so some means of compulsion are essential to obtain what is needed.
* * * * * *
[S]tate courts quite generally have held that the power to legislate carries with it by necessary implication ample authority to obtain information needed in the rightful exercise of that power, and to employ compulsory process for the purpose. [Id. at 532-33, 457 A.2d 828 (quoting McGrain, supra, 273 U.S. at 165, 175, 47 S.Ct. at 325, 329, 71 L.Ed. at 589, 593) (citations omitted).]
The Court concluded that "[a] reasonable incident of the Council's power to investigate under N.J.S.A. 40:69A-37 is the power to compel testimony, i.e., to issue subpoenas." Id. at 533, 457 A.2d 828. The Court recognized that:
Unless an investigating committee has power to compel testimony, it has no feasible method to obtain all the information it needs to perform its legislative function. Without the power to interrogate knowledgeable officials under oath, its investigation may become a nullity. [Id. (emphasis added) (citations omitted).]
See Weiner v. County of Essex, 262 N.J.Super. 270, 283, 620 A.2d 1071 (Law Div.1992) ("Clearly, duties imposed upon a county pursuant to a general state law, or obligations validly assumed under statutory authorization, remain unaffected by a county reorganization.")
Satisfied that the legislative grant of subpoena power to the Board of Chosen Freeholders is not inconsistent with the Optional County Charter Law, the court must determine whether or not the provisions of N.J.S.A. 40:41A-86 limit the subpoena power of the Board. To answer that question, the specific language must be examined. Parts of Section 86 are significant:
[T]he board of chosen freeholders shall deal with county employees only through the officials responsible for the over-all executive management of the county's affairs.... All contact with *304 county employees, all actions and communications concerning the administration of the county's government and provision of services, shall be through the aforementioned officials, except as provided in this act.
Nothing in this act shall be construed to prohibit the board's inquiry into any act or problem of the county's administration. Any freeholder may require a report on any aspect of the government of the county at the time by making a written request to be head of the executive branch of county government. The board may, by majority vote of the whole number of its members, require the head of the executive branch to appear before the board sitting as a committee of the whole, and to bring before the board such records and reports, and such officials and employees of the county as the board shall deem necessary to insure clarification of the matter under study.
The aforementioned provision provides a mechanism for the board to secure information from the executive branch of government and, by a majority vote, permits the board to require the head of the executive branch to appear and to bring such records and reports, and such officials and employees as the board shall deem necessary. This provision does not include the authority of the board to secure the appearance of the county executive, employees or related records by the exercise of its subpoena power.
The limitations set forth above are significant and do, in reality, restrict the subpoena power of the Board. Despite the aforementioned limitations, the board is not without a remedy if the county executive fails to provide the type of report identified above or, after a majority vote of the board, refuses to appear before the board. Consistent with Rule 4:69, the board may initiate a complaint in lieu of prerogative writs seeking appropriate relief.

IV

CESSATION OF EXPENDITURES

Section 2.01.010U
The County Executive further challenges section 2.01.010U, which provides the Board with the authority to order cessation of expenditures. Section 2.01.010U provides that the Board may:
[o]rder cessation of expenditures in any appropriation they have approved for any agency not under the jurisdiction of the Executive if it is apparent to the Board that the funds are not being used for the purposes authorized or are being misused, or if the possibility of overexpenditure exists. [Code § 2.01.010U.]
The County Executive submits that the language is overly broad and to that extent that it applies to autonomous county agencies, exceeds the jurisdiction of the Board, pursuant to Board of Trs. of Mercer County Comm. College v. Sypek, 160 N.J.Super. 452, 390 A.2d 629 (App.Div.1978). In Sypek, the court held that the county community colleges and vocational schools that were created by state statute were not agencies with the ambit of the Optional County Charter Law. The court reached this conclusion based on the absence of express power over such agencies under the Optional County Charter Law. The court noted that "[a] court should not find such power in the county unless the statute under consideration confers it expressly or by unavoidable implication." Id. at 462, 390 A.2d 629. In response, the Board asserts that the provision does not apply to autonomous county agencies, but to those agencies expressly identified in N.J.S.A. 40:41A-125.
*305 In this opinion the court has reviewed, at length, the fiscal and budgetary duties and power of each branch of government and the authority to appoint a registered municipal accountant. As noted heretofore, the County Executive is vested with the authority to "prepare and submit to the board for its consideration and adoption an annual operating budget and a capital budget, establish the schedules and procedures to be followed by all county departments, offices and agencies in connection therewith, and supervise and administer all phases of the budgetary process." See N.J.S.A. 40:41A-36(b). The Board is given the express legislative power to conduct "actions specified as resolutions in the Local Budget Law, as set forth in N.J.S.A. 40:41A-38o, and to approve the annual operating and capital budgets pursuant to the Local Budget Law," N.J.S.A. 40:41A-41g.
Against that statutory backdrop, N.J.S.A. 40:41A-125 provides that the Board may adopt an Administrative Code, with the following guidance:
a. ... the board of chosen freeholders shall adopt an administrative code organizing the administration of the county government, setting forth the duties and responsibilities and powers of all county officials and agencies, and the manner of performance needed.
b. The administrative code may require that the county board of taxation, county board of elections, jury commissioners of the county, county clerk, surrogate and sheriff be subject to such annual budgetary procedures and requirements as may be specified therein. These procedures and requirements may include, but shall not be limited to, the preparation and submission of an annual budget in accordance with the provisions of the administrative code, and the submission of such periodic budget reports as may be provided therein. The administrative code may further provide that [these same offices] shall be subject to such accounting controls, central purchasing practices, personnel procedures, and central data processing services as are specified in the code, or in administrative orders adopted pursuant thereto; provided, however, that nothing herein shall restrict or limit the authority of [these offices] as the appointing authority of their respective offices.
c. Nothing in the administrative code shall change the duties or powers of county officers whose existence is mandated by the Constitution or shall diminish the duties, responsibilities or powers of any elected or appointed head of the executive branch or chief assistant thereto or county administrator.
As stated above governments operating under an Optional County Charter Plan are "governed by the plan adopted, by the provisions of the law applicable to all optional plans, and by all general laws, subject to the transitional provisions in article 7 of this act."[8]N.J.S.A. 40:41A-125 specifically expressly provides that the Board may set "forth the duties and responsibilities and powers of all county officials and agencies, and the manner of performance needed." The provision further provides that the Board may adopt provisions concerning budgetary procedures and requirements for six specific agencies. The statute limits the Board only by providing that the Code is prohibited from "chang[ing] the duties or powers of county officers whose existence is mandated by the Constitution or [from] diminish[ing] the duties, responsibilities or powers of any elected or appointed head of the executive branch or *306 chief assistant thereto or county administrator." N.J.S.A. 40:41A-125c.
Therefore, the Board may require the county board of taxation, county board of elections, jury commissioners of the county, county clerk, surrogate and sheriff to be subject to specific budgetary procedures and requirements. As the County Executive points out, and the Board concedes, to the extent that the challenged Code provision applies to autonomous agencies, the provision is unenforceable.
N.J.S.A. 40:41A-125 limits the authority of the Board to the six specific agencies. To eliminate any confusion in the future and to avoid unnecessary litigation, the court directs the Board to amend the Code to specifically identify the agencies enumerated in N.J.S.A. 40:41A-125b.
Equally clear is that, while N.J.S.A. 40:41A-125 expressly provides that the Board may subject these offices to annual budgetary procedures and requirements, the County Executive is cloaked with the authority to implement and monitor said procedures. See N.J.S.A. 40:41A-25, -32b, -86 and -125c. As noted heretofore, the County Executive is vested with the power to: (1) "[d]evelop, install and maintain centralized budgeting, personnel and purchasing procedures as may be authorized by the administrative code"; (2) "[p]repare and submit to the board for its consideration and adoption an annual operating budget and a capital budget; (3) establish the schedules and procedures to be followed by all county departments, offices and agencies in connection therewith; and (4) supervise and administer all phases of the budgetary process". See N.J.S.A. 40:41-36b and h.
Pursuant to the aforementioned statutory provisions, the court finds that the function of implementing the centralized budgetary procedures Code rests with the County Executive.

V.

APPOINTMENT OF CITIZEN BOARDS

Section 2.01.010V
The County Executive challenges that section of the Code that allocates to the board the authority to appoint citizen boards. Section 2.01.010V provides that the Board may:
[a]ppoint such temporary advisory boards of citizens as the Board feels necessary to advise them in setting legislative policy, pursuant to N.J.S.A. 40:23-5.4. [Code § 2.01.010V.]
The County Executive asserts that the aforementioned provision improperly assigns to the board, authority that is assigned to the County Executive pursuant to the Optional County Charter Act. In response, the Board submits that the provision is compatible with the Optional County Charter Plan, and permits that Board, as part of its legislative responsibilities, to solicit valuable information, advice and input from the citizens of Mercer County.
N.J.S.A. 40:23-5.4, relied upon by the Board as the statutory authority for the appointment of advisory boards, provides:
The board of chosen freeholders is authorized to appoint an advisory committee or commission composed of residents of New Jersey representative of various county economic and governmental interests, and to seek its advice on matters of economic development.
As noted above, the general law expressly provides that the Board may create an advisory committee to give advice on economic development matters. The issue is *307 whether this authority is retained under the Optional County Charter Act.
The Optional County Charter Act, more specifically, N.J.S.A. 40:41A-25 provides:
Upon adoption of any of the optional forms of government set forth in this act, the county shall thereafter be governed by the plan adopted by the provisions of this law applicable to all optional plans, and by all general laws, subject to the transitional provisions in article 7 of this act. Determining whether the Board retains this authority under the Optional County Charter Act.
Therefore, the authority to appoint temporary advisory boards requires the court to review those provisions, pursuant to the Optional County Charter Act, that define a "general law." N.J.S.A. 40:41A-26, in pertinent part, provides:
For the purposes of this act, "a general law" shall be deemed to be such law or part thereof, heretofore or hereafter enacted, that:
a. Is not inconsistent with this act; and

b. Is by its terms applicable to or available to all counties, or;

c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare. [N.J.S.A. 40:41A-26 (emphasis added).]
The standards set forth herein, require the court to determine whether the authority set forth in N.J.S.A. 40:23-5.4 is consistent with and can coexist with the powers afforded to the Board pursuant to the Optional County Charter Act.
Under the Optional County Charter Act, the County Executive, "[w]ith the advice and consent of the board, shall appoint the county counsel, the administrator, the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities." N.J.S.A. 40:41A-37b. The Board "[s]hall advise and consent to all appointments by the executive for which board confirmation is specified" and may exercise the power of advice and consent to actions of the executive by way of resolution. N.J.S.A. 40:41A-38d 41a.
In enacting the Optional County Charter Plan, the legislature intended to provide each county with the flexibility to choose the form of government best suited to its characteristics, needs and preferences. Shapiro, supra, 177 N.J.Super. at 93, 424 A.2d 1203. "The legislative purpose underlying the County Executive plan was to assure the centralized professional administration of county government by vesting in a single elected official the power to administratively direct its operations." Ibid. (citing New Jersey County and Municipal Government Study Commission, County Government: Challenge and Change, 109 (Second Report April 28, 1969) ("Musto Report")).[9]
It is axiomatic that where the statute is clear and unambiguous the court must not look beyond the plain language unless literal application of the statute would lead to an absurd result or one plainly at odds with the policy of the whole litigation. Fisher v. New Jersey State Parole Bd., 303 N.J.Super. 229, 696 A.2d 739 *308 (App.Div.1997), cert. denied, 152 N.J. 190, 704 A.2d 20, aff'd, 154 N.J. 85, 711 A.2d 293 (1998). Moreover, it is generally that, under the doctrine of expressio unius, where the Legislature makes express mention of one thing, the implied intent is the exclusion of the other. Gangemi v. Berry, 25 N.J. 1, 11, 134 A.2d 1 (1957); Shapiro, supra, 177 N.J.Super. at 94, 424 A.2d 1203.
In the case at bar, the court finds that N.J.S.A. 40:23-5.4 conflicts with the specific grants of power under the Optional County Charter Law, and therefore § 2.01.010V of the Code is in violation of the specific provisions set forth in N.J.S.A. 40:41A-86 (Separation of powers) and N.J.S.A. 40:41A-125(c)(Adoption of the Administrative Code). While the Board has been entrusted with the "germane powers" to employ its legislative functions, the Board may not divest the County Executive of his/her "expressed powers" in the process. The statute specifically provides that the appointment power is assigned to the County Executive. The statute limits the authority of the Board in the appointment process to advise and consent to the appointments of the County Executive.
There is no room for interpretation by this court; the statute is clear and unambiguous.

VI.

THE BOARD'S ADVICE AND CONSENT AUTHORITY

Sections 2.02.130, 2.02.140, 2.01.110, and 1.03.020

A.

DIRECTOR OF COMMUNICATIONS AND POLICY AND DIRECTOR OF INTER-GOVERNMENTAL AFFAIRS
The County Executive asserts that the positions referenced in Sections 2.02.130 ("Director of Communications and Policy"), 2.02.140 ("Director of Inter-Governmental Affairs") of the Code fail to meet the criteria for advice and consent enumerated in N.J.S.A. 40:41A-37b. In response, the Board contends that because it has the authority to create non-statutory positions, it also has the companion authority to provide for the manner of appointment and to mandate advice and consent by the Board.
The court finds that the advice and consent authority by the Board is restricted to those titles listed in N.J.S.A. 40:41A-37b. N.J.S.A. 40:41A-37b provides that "[t]he county executive ... [w]ith the advice and consent of the board, shall appoint a county counsel, the administrator, the heads of all departments and any division created within such departments, and the members of all county boards, commissions, and authorities."
In Sections 2.02.130 and 2.02.140, respectively, the Board creates the positions of Director of Communications and Policy and Director of Intergovernmental and Community Affairs. To fall within the statutory ambit of N.J.S.A. 40:41A-37b, these positions must be considered as department heads or heads of divisions created within the departments.
The position of Director of Communications and Policy is referenced in Section 2.02.130 of the Amendment, and the duties of this office are contained therein. Section 2.02.130 sets forth the following:
The Director of Communications and Policy will serve at the pleasure of the County Executive. The Director shall be responsible for directing and coordinating the County Executive's communications and shall also be responsible for strategic planning and development of long range policy initiative of the County Executive. The Director shall be qualified *309 by education, experience, and ability and shall be responsible for any other such related functions as the County Executive may assign. This position shall be subject to Freeholder Board confirmation.
The position of Director of Intergovernmental and Community Affairs, set forth in Section 2.02.140 of the Amendment, outlines the duties and responsibilities of the office and provides:
The Director of Inter-Governmental and Community Affairs will serve at the pleasure of the County Executive. The Director shall be the County Executive's liaison with local, state and federal government agencies on issues affecting county government and shall be responsible for constituent relations with respect to county initiatives. The Director shall be qualified by education, experience and ability and shall be responsible for any other such related functions as the County Executive may assign.
In a certification filed by the County Administrator, John F. Ricci, the County Administrator provides a description of the chain of command and reporting responsibilities of both positions. The certification states that:
... the Directors of Communication and Policy and Intergovernmental Affairs serve as staff, not as line positions. They are allocated to the County Executive's office for organizational purposes, and report directly to the Chief of Staff, who reports directly to the County Executive.... The Chief of Staff and his office do not perform any programmatic or operational functions, but primarily serve as the County Executive's personal staff. The Director of Communications and Policy supervises one employee, the Public Information Officer, and the Director of Intergovernmental Relations does not supervise any employees. No secretarial or support staff are assigned to either Director. Both offices are entirely self-contained and self-sufficient. [(citations omitted) (emphasis added) ].
The court concludes that neither the Director of Communications and Policy nor the Director of Intergovernmental and Community Affairs positions come within the statutory ambit of N.J.S.A. 40:41A-37b. The positions that require advice and consent by the Board pursuant to N.J.S.A. 40:41A-37b, to wit: the County Administrator, County Counsel, Department Directors and Division Chiefs, all supervise personnel, develop and implement policies and standards, and manage major programs related to the operation of county government. The two newly created positions set forth herein are distinguishable. Both individuals occupying these positions report directly to the County Executive and do not supervise personnel or manage major programs. Based on the responsibilities of each position, the absence of supervisory authority and their direct reporting responsibilities to the County Executive, the Director of Communications and the Director of Intergovernmental Relations offices cannot be classified as heads of departments or of divisions created within such departments. Accordingly, Sections 2.02.130 and 2.02.140 improperly enlarge the authority of the Board.

B.

DEPUTY CLERK TO THE BOARD
Section 2.01.110.M. of the Amendment establishes the Deputy Clerk to the Board position and provides that the Clerk to the Board shall "[w]ith the advice and consent of the Board, appoint a Deputy Clerk in the classified civil service who shall perform such duties as the Clerk shall assign *310 and perform the duties of the Clerk in the event he/she is absent."
Again, there is no statutory authority for the Board to exercise advice and consent authority over the Deputy Clerk, or over appointments made by the Clerk to the Board. Furthermore, the assertion of advice and consent authority in the Code is incompatible with the position of the Deputy Clerk in the classified civil service. It is well established that classified civil service employees are appointed pursuant to the Civil Service Act, N.J.S.A. 11A:1-1 et seq., and are not subject to further approval by legislative bodies.

C.

STATUTORY POSITIONS

Section 1.03.020B
Finally, Section 1.03.020.B. of the Amendment sets forth fifteen statutory positions and provides that "all such appointments shall be made by the County Executive with the advice and consent of the Board of Freeholders." The court finds that these positions fail to meet the statutory criteria for advice and consent. As previously stated, the Board's advice and consent authority is limited to those titles and positions enumerated in N.J.S.A. 40:41A-37b. With the exception of the Engineer and Road Supervisor, which are designated as divisions within departments, none of the remaining titles come within the enumerated categories of N.J.S.A. 40:41A-37b.

VII.

THE AUTHORITY OF THE BOARD TO APPOINT ITS MEMBERS TO BOARDS AND COMMISSIONS

Section 2.17.150.A.
Section 2.17.150.A. provides that "one member of the Board shall serve on any five member advisory board, and that two members of the Board shall serve on any advisory board comprised of six or more members." The County Executive asserts that the appointment of freeholders to county boards, except as provided by law, violates N.J.S.A. 40A:9-23. N.J.S.A. 40A:9-23 provides that:
No member of a board of chosen freeholders during the term for which he is elected shall be eligible for appointment to any office or position required to be filled by the Board unless he shall resign and cease to be such a member at least 3 months prior to this appointment, except in cases where such office or position, by law, may be filled by a member of the Board or the appointment is to the position of county counsel or county treasurer.
Two reported decisions support the position by the County Executive that freeholders are precluded from serving as members of county boards except where explicitly provided for by law. See Mathesius v. Mercer County Improvement Authority, 177 N.J.Super. 626, 427 A.2d 608 (App.Div.1981); Hollander v. Watson, et. al., 167 N.J.Super. 588, 401 A.2d 560 (Law. Div.1979) aff'd 173 N.J.Super. 300, 414 A.2d 275 (App.Div.1980). In Mathesius, the Appellate Division reviewed an attempt by the Mercer County Freeholder Board, through the Administrative Code, to appoint two of its members to the County Improvement Authority. Id. at 636, 427 A.2d 608. Relying on N.J.S.A. 40A:9-23, the Court held that the offices were incompatible due to the Board's legislative control over the policy and monetary decisions affecting the Authority. Ibid.
In Hollander, the Appellate Division also invalidated the appointment of a Mercer County Freeholder to serve on the *311 Board of Trustees for the county college. 167 N.J.Super. at 302, 400 A.2d 843. Finding that the offices of trustee and freeholder were incompatible, the court held that:
Offices are incompatible when there is a conflict or inconsistency in their functions. Therefore, offices are not compatible when one is subordinate to or subject to the supervision or control of the other or the duties of the offices clash requiring the officer to prefer one obligation over the other. Reilly v. Ozzard, 33 N.J. 529, 166 A.2d 360 (1960). If such is the governmental scheme, incompatibility must be found even though in practice a conflict of duty might never arise. [Id. at 562-63, 166 A.2d 360 (emphasis added) ].
Mathesius and Hollander are distinguishable from the case at bar in that they both address the incompatibility of freeholders serving simultaneously on autonomous agencies. Despite this distinction, both cases articulate the standard to be applied when examining a conflict issue pursuant to N.J.S.A. 40A:9-23. Applying this standard, the court rejects the notion by the Board that advisory bodies are purely advisory and that the Board exercises little, if no, supervision or control. Advisory bodies are, by nature, subordinate to the Freeholder Board. Many of these Boards collect information, perform investigations, conduct evaluations and submit recommendations that will require Board approval. For example, the Open Space Preservation Board makes recommendations for the acquisition of properties that will be subject to approval by the Board. Similarly, the Human Services Advisory Council recommends grant funding prioritization plans that require Board approval.
As set forth by the Appellate Division rulings in Mathesius and Hollander, Freeholders may not sit as members of any board over which the freeholder board exercises supervision or control. Because advisory boards typically take official action or make recommendations that must be approved by the Board, they are often under the direction and control of the Freeholder Board. As a result, holding an advisory position and serving as a member of the Board are incompatible under N.J.S.A. 40A:9-23.
Furthermore, the Optional County Charter Act supports the conclusion that the Legislature, consistent with the policy enunciated in N.J.S.A. 40A:9-23, intended to prevent members of a Freeholder Board from serving on County boards and commissions. The enumerated powers and duties of the County Executive, more specifically N.J.S.A. 40:41A-36, provide that the Executive shall "serve as an ex-officio non-voting member of all appointive bodies in county government." No parallel citation is found in the duties of the Freeholder Board. Interestingly, the ex-officio non-voting member status assigned to the County Executive evidences the intent by the Legislature to provide for the involvement and participation of the County Executive in the deliberative process, while at the same time placing limitations on the authority of the County Executive.
The failure to provide for Freeholders on county boards was not a legislative oversight. The Legislature has determined, in certain limited situations, to specifically provide for Freeholder membership on certain Boards and Commissions. See N.J.S.A. 18A:46-39 (Board of School Estimate); N.J.S.A. 44:1-11 (County Welfare Board); and N.J.S.A. 40:27-1 (Planning Board). Absent such a legislative declaration, Freeholder membership on boards and commissions violates the provisions set forth in N.J.S.A. 40A:9-23. Therefore, freeholder representation is inappropriate *312 on the Boards and Commissions listed below:
(1) Disabilities Advisory Council (Section 2.20.030.I.);
(2) Open Space Preservation Board (Section 2.22.010.B.);
(3) Commission on Abused, Neglected, and Missing Children (Section 2.27.050.C.);
(4) Hamilton Duck Island Advisory Commission (Section 2.28.020.A. & B.);
(5) Park Commission (Section 2.30.010.-A.);
(6) Commission on the Status of Women (Section 2.32.020);
(7) Advisory Solid Waste Council (Section 2.36.020.C.4);
(8) Human Services Advisory Council (Section 2.36.030.A.11) and
(9) Advisory Council on Special Transportation (Section 2.37.030.A.5)

VIII.

COUNTY EXECUTIVE APPOINTMENT POWERS; COMPOSITION OF PUBLIC MEMBERS OF BOARDS

Sections 2.17.150B and 2.02.050
The County Executive asserts that Sections 2.17.150 (Composition of members) and 2.02.050 (Interim appointments) interferes with the authority allocated to the executive branch of county government pursuant to N.J.S.A. 40:41A-125. Section 2.17.150 provides, as follows:
The composition of the public members of every Board shall be such that both major political parties shall be represented and that, to the greatest extent possible, each advisory board reflects all major population components of the county.
Section 2.02.050 terminates a temporary appointment by the County Executive after 90 days, unless the Board, by Resolution, authorizes an extension of the acting appointment.
For the reasons set forth herein, both sections are invalid. Pursuant to N.J.S.A. 40:41A-125c, the Administrative Code cannot, in any respect, diminish the duties of the County Executive. The County Executive is authorized to "appoint the county counsel, the administrator, the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities." N.J.S.A. 40:41A-37b. Section 2.17.150 diminishes the authority by the County Executive to nominate individuals to County Boards and Commissions and is, therefore, invalid.
The authority of the Board with respect to appointments of the County Executive is limited to providing advice and consent. N.J.S.A. 40:41A-37b. As a result, allocating to the Board the authority to dictate the composition of Boards and Commissions inappropriately extends the statutory power of the Board.
The court also finds Section 2.02.050 to be an improper restriction on the County Executive's appointment powers. N.J.S.A. 40:41A-87 provides:
No member of any board of chosen freeholders in a county operating under a charter adopted pursuant to this act shall individually or collectively seek to influence the head of the executive branch to dismiss any person from, or to appoint or to promote any person to, any position in the executive branch of county government. [(citations omitted)].
Section 2.02.050 of the Amendment is clearly in direct conflict with the provisions of N.J.S.A. 40:41A-87. The Board cannot *313 appropriate unto itself the power to temporarily extend the term of a de facto officer.

IX.

COUNTY EXECUTIVE'S AUTHORITY TO PREPARE THE BUDGET

Sections 3.02.020, 3.02.030, and 3.02.050
The County Executive challenges several provisions pertaining to the preparation of the annual county budget. Section 3.02.020 (Budget preparation generally) provides that:
A. The County budget shall be prepared by the Executive. On or before September 1, the Executive shall establish the schedules and procedures to be followed by all County agencies, including but not limited to departments or agencies headed by constitutional officers (Sheriff, Surrogate, Clerk and Prosecutor), for purposes of submitting budget requests for the next ensuing budget year;
These Schedules shall provide for transmission of information including but not limited to:
i. Performance and workload data for each operating unit in the submitting agency for the proposed budget year, the two (2) past fiscal years, and estimated figures for the current fiscal year;
ii. Data on all budgetary positions, including but not limited to present and projected vacancies and savings estimated;
iii. All emergency or supplementary appropriations utilized by the unit during the present year;
iv. Full statistical and written narrative justification for all budget requests;
All schedules shall provide for full description of each of the functions or programs of each unit in the agency by such supporting minor line items of expenditures and to enable the Board to have fullest possible understanding of the request and give an accurate statement of the cost, personnel, materials and supplies, contractual services, and other budget elements of each function or program and the major elements of work product or other benefit to be achieved by such function or program expenditure;
All initial agency submissions shall be on budget forms providing for submission of the above specified information by November 1 and no agency's budget shall be include in the Budget Document as present to the Board if the above specified information is not included for the Board's consideration;
In order to minimize the cost of County government while maintaining a reasonable level of essential services, the Executive shall prioritize his/her budget recommendations to the Board. Such a system shall identify programs, elements and activities within each agency in priority order indicating various levels at which they should be funded, if at all, with the lowest possible cost consistent with a reasonable degree of efficiency and effectiveness of performance;
B. The Executive shall provide the establishment and operation of a system of work programs and quarterly allotments for operation of the budget. It shall be the duty of the Executive to develop and report appropriate unit cost of budgeted expenditures;
C. The budget requests submitted to the Executive shall include work program for the year showing all requested appropriations broken down into monthly or quarterly allotments, as may be required. The executive shall review requested allotments in light of the work *314 program of the department, office or agency concerned, and if he/she deems it necessary, may revise, alter, or change them before the same are submitted to the Board and shall include the changes made. The aggregate of such allotments shall not exceed the total appropriation available to each department, office or agency for the fiscal year;
D. In holding hearings on agency requests, the Executive shall schedule such hearings so as to provide the greatest public awareness of and attendance at same.
Section 3.02.030 (The budget document) provides:
A. On or before January 15, the Executive, after such review, analysis and hearing as he/she deems necessary, shall submit to the Board a budget document consisting of the proposed County budget and a budget message;
B. The budget shall be in such form as will comply with the Local Budget Law, together with such additional schedules and analyses as are mandated by the Code and as the Board may require. The budget document shall be indexed as to all units and programs. The budget shall also contain a recommended budget for the Board based on information supplied to the Executive by the Board;
C. The budget shall also include and reflect the total projected annual expenditure of each and every department, commission, agency and board to include all sources of revenue to be expended regardless of the source;
D. The budget shall include and reflect the total projected annual expenditure of each and every non-County agency requesting any amount of County funding, and shall also include all sources of projected sources of revenue to be received and expended regardless of the source including, but not limited to, grants;
E. The budget message shall embody the complete proposed financial program of the County. It shall explain the budget in terms of both fiscal proposals, utilization of personnel and equipment, and work to be done. It shall outline the proposed financial policies of the County for the ensuing fiscal year, describe the important features of the budget plan, and indicate its major objectives. It shall indicate any major changes in financial policies and in expenditures, appropriations and revenues as compared with the preceding fiscal year and shall set forth reasons for changes;
F. It shall be the duty of the Executive to indicate, as completely and fully as possible in the budget, any and all modifications, costs or reductions made in budget requests submitted by each County agency, department, including but not limited to those headed by Constitutional officers. Additionally it shall be the duty of the Executive to advise such department and agencies of the modifications and/or reductions made to such budgetary requests at the same time that the budget is submitted to the Board;
G. It shall be the duty of the Executive to present to the Board in a timely fashion all information as required by the Board for its consideration of the Budget. Within fourteen (14) days after submission of the Budget to the Board, the Board shall file with the Executive a schedule of requests for information and appearances by County officials. The Executive shall provide all such information as requested at that time or in subsequent requests within seventy-two (72) hours after receipt thereof or within such extension thereof as the Board, through its Chair, may authorize for *315 good cause. He/she shall further provide that all such County personnel as are requested to testify on the budget appear at the time and place requested. All Board requests for appearances by County personnel shall be filed with the Executive at least forty-eight (48) hours before the time set for such appearance, except that once a person appears he/ she may be recalled directly by the Board to continue to clarify his/her testimony. Any written information request by any member of the Board during testimony shall be supplied within seventy-two (72) hours after it has been orally requested during such testimony;
H. The Executive shall be responsible for providing the Board with fifteen (15) copies of his/her budget document and all related documents, arranging, for all required publication of the budget, and for providing the Board with copies of the adopted budget with schedules including final figures as appropriation, allotment, budgeted positions, and specific changes in all functions and programs as originally proposed in the budget document as first submitted.
Finally, Section 3.02.050 (Board action), provides:
Following the Executive's submission of the budget, the Board, as the governing body under the terms and conditions of the New Jersey Local Budget Law, shall consider and take such action as it deems appropriate, in its sole and exclusive discretion, including adoption, with or without amendment, and without any further need to obtain concurrence or approval by the Executive who shall be without veto power on the budget finally adopted by the Board. The budget shall be introduced, approved, amended and adopted by resolution passed by not less than a majority of the full membership of the Board pursuant to the Local Budget Law.
In carrying out their budgetary functions the Board shall be permitted to obtain any and all documents or information necessary for their assessment of the budget from any and all departments, offices, agencies, and employees, and shall also have the power to compel the attendance of any individual to obtain any information necessary to assess the budget. It shall be the obligation of all County employees, departments, offices and agencies to cooperate with any Board request.
The County Executive asserts that budget preparation is an executive function, not subject to Board participation or regulation through the Code. In response, the Board submits that the budgetary provisions in the Code fall within the scope and authority of the Board's statutory responsibilities to review and analyze the budget.
The Optional County Charter Act allocates to the County broad authority to prepare the annual county budget. The budgetary sections in the Code contradict N.J.S.A. 40:41A-36b. This statute allocates to the County Executive the authority to:
[p]repare and submit to the board for its consideration and adoption an annual operating budget and a capital budget, establish the schedules and procedures to be followed by all county departments, offices and agencies in connection therewith, and supervise and administer all phases of the budget process.
The County Executive is statutorily obligated to present an annual operating budget to the Board on or before January 15 of each calendar year, N.J.S.A. 40:41A-133, and, in so doing, must conform to the provisions of the Local Budget Law, N.J.S.A. 40A:4-1 et seq. N.J.S.A. 40:41A-133, in pertinent part, provides:

*316 On or before September 1 of each year, the budget officer shall establish the schedules and procedures to be followed by all county departments, offices and agencies to prepare the required budget document. He may conduct such analyses or hearings as he deems necessary.
The Legislature has established a specific process for Boards to investigate and review the budget. The aforementioned budgetary sections in the Code fail to take into account the standards and procedures provided by N.J.S.A. 40:41A-86. This statute, in pertinent part, provides:
... Any freeholder may require a report on any aspect of the government of the county at any time by making a written request to the head of the executive branch of county government. The board may, by majority vote of the whole number of its members, require the head of the executive branch to appear before the board sitting as a committee of the whole, and to bring before the board such records and reports, and such officials and employees of the county as the board shall deem necessary to insure clarification of the matter under study.
In Amato v. Board of Chosen Freeholders of the County of Essex, 240 N.J.Super. 313, 573 A.2d 209 (App.Div.1990), the court addressed the respective roles of the County Executive and the Board in the preparation and adoption of the County Budget. In Amato, the Executive asserted that the Board was without authority to modify or amend the budget without his approval or concurrence. Id. at 315, 573 A.2d 209. As a result, the County Executive filed an application to enjoin the Board from adopting any budget that had not been approved by him. Ibid. On appeal, the court discussed the budgetary process in detail and held that:
... the county executive is a member of the "governing body" for the purpose of exercising all "administrative or executive functions" including the duty to "[p]repare and submit" to the board the annual operating and capital budgets. N.J.S.A. 40:41-36b. The board, in turn, is a member of the "governing body" for the purpose of exercising its legislative power to "approve the annual operating and capital budgets pursuant to the Local Budget Law." N.J.S.A. 40:41A-41g. Nothing in the Charter Law suggests that each branch of government shall share in their respective powers and duties, or have the power to "concur" in other's actions. [Id. at 317, 318, 573 A.2d 209. (citations omitted).]
The court noted that "[t]he legislature obviously recognized, that to sustain proper checks and balances between the Executive and legislative branches, the Board should have the exclusive power to approve, amend and adopt the budget as [prepared and] submitted by the County Executive." Id. at 319, 573 A.2d 209.
The Amato decision clearly delineates the respective tasks of the County Executive and the Board and, essentially, indicates that the Board's review function is necessary to maintaining the balance of powers. In the within matter, Sections 3.02.020, 3.02.030, and 3.02.050 extend well beyond the Board's right to a meaningful review. The Board's attempt to control and determine the type of information the Executive must include with the budget over-extends the authority allocated to the Board by the legislature. The court is satisfied that the Appellate Division in Amato did not intend to provide the Board with a voice in the preparation of the budget.
In accordance with statutory and case law, the County Executive and the Board have distinct roles. It is readily apparent *317 to the court that the Executive, not the Board, has the discretion to determine the process used for budget preparation. Specifically, the Board of Freeholders' role is to "approve the annual operating and capital budgets pursuant to the Local Budget Law." N.J.S.A. 40:41A-41g. The Board does not have a statutory right to dictate to the County Executive the manner in which the budget will be prepared. In the case at bar, Sections 3.02.020, 3.02.030, and 3.02.050 attempt to regulate the authority of the County Executive to exercise his administrative responsibilities related to the preparation of the budget. Accordingly, these sections impermissibly attempt to expand the Board's power.

X.

BOARD AUTHORITY TO CONTROL ADMINISTRATIVE FUNCTIONS OF COUNTY TREASURER'S OFFICE

Section 2.03.050
Section 2.03.050 (Surrogate's fees) of the Amendment, relating to the handling of fees collected by the Surrogate's Office, provides:
In order to upgrade and modernize services provided by the Surrogate's office, the County Treasurer shall return to the County Surrogate the amount set forth in N.J.S.A. 22A:4-17.2 from each fee received for the probate of a Will, for the grant of general administration, for the grant of letters of guardianship for a minor and for the grant of letters of trusteeship. All such sums shall be returned by the Treasurer to the Surrogate within ten days of the receipt of such funds pursuant to N.J.S.A. 22A:4-17.2. In the event such funds are not returned within days, the Surrogate shall provide formal written notice to the Treasurer, regarding such failure. If the County Treasurer refuses or fails to return such funds within ten days of formal written notice all funds in dispute shall be placed in a interest bearing account separately segregated from other funds and are not to be used for any purpose other than for improvements/modernization of the Surrogate's office through expenditure directed and approved by the Surrogate. Additionally, a specific written explanation shall be provided by the Treasurer outlining the reasons for the refusal or failure to comply with this ordinance and the applicable State Statute.
Pursuant to N.J.S.A. 40:41A-125a, the Board of Freeholders has the authority to "adopt an administrative code organizing the administration of county government." Despite this broad authority, the power of the Board is not unbridled. Significantly, the Board does not have the authority to establish or regulate procedures that are preempted by state statute. In the case at bar, the proposed amendment violates N.J.S.A. 40:41A-125 by attempting to improperly extend the authority of the Board. Furthermore, the strict and explicit standards set forth in N.J.S.A. 22A:4-17.2 control the procedures for the processing of the aforementioned fees.
The doctrine of preemption is well established in New Jersey law. "When the Legislature has preempted a field by comprehensive regulation, a municipal ordinance attempting to regulate the same field is void if the municipal ordinance adversely affects the legislative scheme." See Plaza Joint Venture v. City of Atlantic City, 174 N.J.Super. 231, 238, 416 A.2d 71 (App.Div.1980) (citing Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 79 N.J. 574, 586, 401 A.2d 681 (1979); Summer v. Township of Teaneck, 53 N.J. 548, 554, 251 A.2d 761 (1969)). In Plaza Joint Venture, supra, the Appellate Division noted:
A legislative intent to preempt a field will be found either where the state *318 scheme is so pervasive or comprehensive that it effectively precludes the coexistence of municipal regulation or where the local regulation conflicts with the state statute or stands as an obstacle to state policy expressed in enactments of the Legislature. [174 N.J.Super. at 238, 416 A.2d 71 (quoting Garden State Farms, Inc. v. Bay, 77 N.J. 439, 450, 390 A.2d 1177 (1978).) ]
In the case at bar, N.J.S.A. 22A:4-17.2 clearly preempts Section 2.03.050. The court finds that the Legislature intended to exclusively govern the subject matter of the aforementioned statute. In this case, the state scheme is so pervasive and comprehensive that it precludes the coexistence of Section 2.03.050. As a result, there is no room for interpretation by the court, N.J.S.A. 22A:4-17.2 was enacted to exclusively regulate and control this area of law. Accordingly, the court directs the Board to remove language not specified in accordance with N.J.S.A. 22A:4-17.2, such that Section 2.03.050 will read as follows:
In order to upgrade and modernize services provided by the Surrogate's office, the County Treasurer shall return to the County Surrogate the amount set forth in N.J.S.A. 22A:4-17.2 from each fee received for the probate of a Will, for the grant of general administration, for the grant of letters of guardianship for a minor and for the grant of letters of trusteeship. All such sums shall be returned by the Treasurer to the Surrogate within ten days of the receipt of such funds pursuant to N.J.S.A. 22A:4-17.2.

XI.

THE BOARD'S AUTHORITY OVER AUTONOMOUS AGENCIES

Sections 2.17.070, 2.17.020, 2.17.080, and 3.03.050
The County Executive contends that Sections 2.17.070 (Creation and dissolution of agencies), 2.17.020 (Composition and appointments), 2.17.080 (Annual budget) and 3.03.050 (Inclusion of bona fide vendors) are null and void because the Board lacks the authority to assert administrative power over autonomous county agencies.
N.J.S.A. 40:41A-125 provides that the Board may adopt an Administrative Code, with the following guidance:
a. ... the board of chosen freeholders shall adopt an administrative code organizing the administration of the county government, setting forth the duties and responsibilities and powers of all county officials and agencies, and the manner of performance needed.
b. The administrative code may require that the county board of taxation, county board of elections, jury commissioners of the county, county clerk, surrogate and sheriff be subject to such annual budgetary procedures and requirements as may be specified therein. These procedures and requirements may include, but shall not be limited to, the preparation and submission of an annual budget in accordance with the provisions of the administrative code, and the submission of such periodic budget reports as may be provided therein. The administrative code may further provide that [these same offices] shall be subject to such accounting controls, central purchasing practices, personnel procedures, and central data processing services as are specified in the code, or in administrative orders adopted pursuant thereto; provided, however, that nothing herein shall restrict or limit the authority of [these offices] as the appointing authority of their respective offices.
c. Nothing in the administrative code shall change the duties or powers of *319 county officers whose existence is mandated by the Constitution or shall diminish the duties, responsibilities or powers of any elected or appointed head of the executive branch or chief assistant thereto or county administrator.
The aforementioned provisions establish that Board does not have the authority, through the adoption of the Administrative Code, to assert its power over autonomous county agencies. See Board of Trustees of Mercer County Community College v. Sypek, 160 N.J.Super. 452, 390 A.2d 629 (App.Div.1978).
Section 2.17.070 provides that the Board may "change or dissolve boards, commissions or agencies to serve such functions as may be provided." Section 2.17.020 further provides that "agency size, composition, and method of appointment shall be provided in the chapter of this title related to that independent agency." As asserted by the County Executive, these provisions are unenforceable to the extent that they apply to autonomous agencies. Furthermore, since there are existing statutes determining the size, composition, and appointment methodology of the boards of each of these agencies, the Board lacks the authority to regulate this area.
Section 2.17.080 of the Amendment provides that "each agency shall be subject to the same annual budget requirements as applied to other county departments" and Section 3.03.050 directs that "all autonomous agencies shall ensure that every effort has been made to include bona fide vendors of the county in all contract negotiations for goods and services where public bidding is not required." The ability to subject autonomous agencies to central budgetary or purchasing control is not conferred in N.J.S.A. 40:41A-125, and is specifically refuted for educational institutions in Sypek, supra, 160 N.J.Super. at 462, 390 A.2d 629. Moreover, the Board is specifically vested with the authority to establish fiscal and budgetary procedures for the county board of taxation, county board of elections, jury commissioners of the county, county clerk, surrogate and sheriff.
To eliminate any confusion in the future, the court directs that the Board amend the Code to make it clear that the authority set forth in N.J.S.A. 40:41A-125 does not extend to autonomous agencies and is limited to the six agencies identified in the statute for budgetary concerns and procedures.

XII.

BOARD AUTHORITY TO ESTABLISH SALARIES FOR COUNTY EMPLOYEES

Section 2.12.030.I.
The County Executive challenges the authority of the Board to set salaries for the positions specifically enumerated in Section 2.12.030.I Section 2.12.030.I., in pertinent part, provides:
The Executive shall have the power and authority to establish the salaries for all county employees below the level of department head. The Board of Freeholders shall have the power and authority to establish the salaries for:
1. County Executive
2. Freeholders
3. Constitutional Officers
a. Surrogate
b. Prosecutor
c. Sheriff
d. County Clerk
4. All Department heads and statutorily designated positions (including, but not limited to, the Clerk of the Board, Freeholder staff, *320 Board counsel, and Clerk of the Board of Elections).
Relying on N.J.S.A. 40:41A-100d and case law, the County Executive contends that the establishment of salaries, except where specifically provided by the Legislature, is an executive function within the province of the County Executive. In response, the Board while acknowledging that the County Executive has the authority to establish salaries for all County employees other than those specified in N.J.S.A. 40:41A-100d, asserts that the provision does not compromise the statutory rights of the County Executive.
N.J.S.A. 40:41A-100d, relied upon as the statutory authority for the Board to set salaries, provides:
The compensation of the county executive, supervisor, manager or board president, and of freeholders and the administrative officer and department head shall be fixed by the board by ordinance promptly after its organization.
The authority for setting salaries in the county executive form of government has also undergone judicial scrutiny in Shapiro v. Essex County Board of Chosen Freeholders, 177 N.J.Super. 87, 424 A.2d 1203 (Law Div.1980), aff'd 183 N.J.Super. 24, 443 A.2d 219 (App.Div.1982), aff'd 91 N.J. 430, 453 A.2d 158 (1982).
In Shapiro, the Essex County Executive challenged the Freeholder Board's enactment of a comprehensive salary ordinance covering employees other than those specified in N.J.S.A. 40:41A-100. Id. at 430, 453 A.2d 158. The New Jersey Supreme Court concluded that:
Fixing salaries of county employees in the executive and administrative branches of government is primarily an administrative or executive function that the Optional County Charter has delegated to the county executive. [Id. at 432, 453 A.2d 158.]
In reaching its determination, the Court relied on the Appellate Division's finding that "by requiring the salaries of the positions listed in Section 100d to be set ordinance, the Legislature established the setting of those salaries as a legislative act. By exclusion, it relegated the setting of all other salaries to be an administrative act." Shapiro, 183 N.J.Super. 24, 28, 443 A.2d 219.
The court has determined that Section 2.12.030.I. improperly expands the Board's salary authority. Accordingly, the court directs the Board to strike ambiguous and misleading language and limit its authority to set salaries to those employees specifically designated in N.J.S.A. 40:41A-100.

XIII.

SUPERVISION OF COUNTY DEPARTMENT HEADS

Sections 2.12.030.C. and 2.02.040.E.
The County Executive asserts that Sections 2.02.040.G. and 2.12.030.C. of the Code reach beyond the statutory powers of the Board and are therefore improper. Section 2.02.040.E. requires that each department head "report to the County Executive in writing at least once each month, in such form as he/she shall specify." This provision is in direct conflict with N.J.S.A. 40:41A-37, which provides the County Executive with the powers of supervision, direction, and control of all county administrative departments. Similarly, Section 2.12.030.C., requiring the County Executive to respond to all written communication from the Board within five days, unless a shorter response period is otherwise specified, conflicts with established procedures enunciated in N.J.S.A. 40:41A-86.

*321 XIV.

THE SHERIFF'S POWERS

Sections 2.04.050, 2.03.030, and 3.03.030
The County Executive challenges Sections 2.04.050 (Collective bargaining), 2.03.030 (Sheriff's Office), and 3.03.030 (Centralized purchasing system) as an attempt to impermissibly expand the authority of the Sheriff by conferring upon him powers legislatively allocated to the County Executive. Section 2.04.050 provides that the Sheriff, the Prosecutor, and the Superintendent of Elections shall be the collective bargaining representatives of the County for the employees of their respective offices. Section 2.03.030 identifies the Sheriff as the employer of all members of his office and appoints the Sheriff to be the representative of the County for collective bargaining.
The County Executive asserts that no authority exists to permit the Sheriff to act as the employer for the purpose of collective bargaining. Moreover, the Executive contends that the aforementioned sections conflict with his authority, pursuant to N.J.S.A. 40:41A-36i, to negotiate contracts for the county. In response, the Board contends that since the sheriff has the authority to hire, discipline, fire his employees and set salaries, it is axiomatic that he is the agent for collective bargaining.
Section 3.03.030 exempts the Sheriff's office from the Centralized Purchasing System of the county for law enforcement related items. The County Executive contends that this provision usurps his authority to negotiate and sign contracts on behalf of the county and violates those sections of N.J.S.A. 40A:4-58 that prohibit local governments from expending funds in excess of those budgeted.
It has been judicially determined that both the Prosecutor and Superintendent of Elections are the authorized collective bargaining representatives for their respective offices. See County of Mercer v. Mercer County Superintendent of Elections, 172 N.J.Super. 406, 412 A.2d 461 (App.Div. 1980); Bergen County Board of Chosen Freeholders v. Bergen County Prosecutor, 172 N.J.Super. 363, 412 A.2d 130 (App.Div. 1980); Mercer County Board of Chosen Freeholders v. Mercer County Prosecutor, 172 N.J.Super. 411, 412 A.2d 809 (App.Div. 1980); and In the Matter of Prosecutor of Middlesex County, 255 N.J.Super. 333, 605 A.2d 265 (App.Div.1992).
The status of the Sheriff as the collective bargaining representative is a novel issue. Nevertheless, the Public Employment Relations Commission ("PERC") has addressed this issue on several occasions. In the Matter of Bergen County Sheriff, 10 NJPER 168 (¶ 15083 1984), a finding was made that the County and Sheriff are joint employers for the purpose of collective bargaining. Concluding that both the County and the Sheriff are indispensable to the collective bargaining process, the PERC Board stipulated that the County should have preeminent authority and final control over negotiable matters of compensation, while the Sheriff should have final control over negotiable noneconomic matters. Id. See also In the Matter of Ocean County Sheriff, 10 NJPER 168 (¶ 15083 1984); In the Matter of Ocean County Board of Chosen Freeholders and Ocean County Sheriff, 11 NJPER ¶ 16229; and In the Matter of Ocean County Sheriff, 25 NJPER ¶ 30051.
Although the aforementioned findings are not binding in this matter, this court is satisfied that this bifurcated approach is proper under the circumstances. Clearly, the Sheriff and the County play a significant role in the negotiation process. *322 Moreover, this procedure does not infringe upon the duties or responsibilities of either party. The bifurcated system does not compromise the Sheriff's power to hire, fire or discipline employees. See Communications Workers of America v. Treffinger, 291 N.J.Super. 336, 677 A.2d 295 (Law Div.1996).
N.J.S.A. 40:41A-36i provides that the County Executive shall negotiate contracts for the County subject to Board approval. The bifurcated system does not infringe upon the Executive's participation in the contract process. A dual approach to collective bargaining does not change the County Executive's ability to contract, it merely distinguishes collective bargaining agreements from other types of contracts. As previously indicated, to achieve stable labor relations, all necessary parties, including but not limited to the County Executive, must be brought to the bargaining table.
Accordingly, the court directs the Board to modify Section 2.04.050, as well as the reference to collective bargaining in 2.03.030, to include both the Sheriff and the County as collective bargaining agents.

XV.

LEASE OF AIRPORT PROPERTY

Section 6.03.010
The County Executive's final argument pertains to the lease of airport property and landing fields. Section 6.03.010 provides:
All leases of airport property entered into subsequent to the adoption of the ordinance codified in this chapter shall be made by public letting to the highest bidder after advertising pursuant to the provisions of the Local Land and Building Law, N.J.S.A. 40A:12-14, which makes separate provision for leases to any private person, public body or nonprofit corporation. The provisions of N.J.S.A. 40A:12-14 are herein adopted as if set forth in full. Provided, further, that the Board of Chosen Freeholders may approve a lease which has not been publicly bid if the County Executive so recommends on the grounds that public bidding of the particular lease is not feasible or would not be in the public interest. Approval of a lease that has not been publicly bid shall require the vote of five members of the Board of Chosen Freeholders.
In challenging this section, the County Executive asserts that Section 6.03.010 represents an inappropriate delegation of authority to the Board, is preempted by State law and improperly attempts to impose a supermajority. The Board, in response, contends that the lease of airports and landing fields are governed by the Local Public Contracts Law and that the concurrence of a supermajority requirement legally sustainable.
The right of the governing body of any county to acquire and lease land acquired for airport purposes is addressed in N.J.S.A. 40:8-1. Pursuant to this provision, "the governing body of any body of any county and the governing body of any municipality, or either of them, may lease the real estate, so acquired, with or without consideration to the State of New Jersey, or any agency thereof, or may lease it to any person for such consideration and for such term of years as may be agreed upon." N.J.S.A. 40:8-1.
In Stern v. Mayor and Aldermen of Jersey City, 8 N.J. Misc. 307, 150 A. 9 (1930), the Court considered the relationship of N.J.S.A. 40:8-1 to P.L.1927, c. 87, the predecessor to the Local Land and Building Law. As the Local Land and Building Law currently does, P.L.1927, c. 87 required that no municipal property *323 be sold or leased except at public sale or auction and to the highest bidder after public advertisement. In reaching a decision, the Court relied on the language in N.J.S.A. 40:8-1 that authorized the governing body of any county to lease land "so acquired to any person, firm or corporation for a consideration and for such term of years as may be agreed upon." Id. at 308, 150 A. 9. As a result, the Court determined that an airport lease is not subject to a sale to the highest bidder after public sale. Ibid.
Interestingly, N.J.S.A. 40:8-3, enacted in 1928, was amended by L.1999, c.1999, § 42. The amendment, underlined in the text, provides:
The governing body of any county may acquire, by lease or purchase, and establish, construct, own, control, lease, equip, improve, maintain, operate, regulate airports or landing fields for the use of airplanes and other aircraft within the limits of such counties, and may use for such purpose or purposes any property, owned or controlled by such county, suitable therefore, provided that the provision or performance of goods or services in connection with the operation, management or administration of an airport shall be done pursuant to the "Local Public Contracts Law," P.L.1971, c. 198 Amended by L.1999, c. 440, § 42. [emphasis added.]

Despite the amendments to N.J.S.A. 40:8-3, no changes were made to N.J.S.A. 40:8-1. Furthermore, N.J.S.A. 40:28-3 authorizes counties that have acquired lands for airport purposes to "lease any portion, activity or department thereof, to any person for such period and upon such terms as shall be approved by the board of chosen freeholders." Read together, the court is satisfied that the legislature intended to distinguish airport property from other types of county land. Accordingly, the leases of land for the operation or management of an airport are exempt from the bidding requirements of the Local Public Contracts Law and Local Land and Building Law.
Finally, the court finds that leases may be awarded by resolution of the governing body, without inserting the requirement of a two-thirds affirmative vote. In New Jersey, there is a case law tradition in New Jersey standing for the proposition that, absent a legislative declaration to the contrary, a majority vote is sufficient for the passage of a municipal ordinance. See Manno v. City of Clifton, 14 N.J.Super. 100, 102, 81 A.2d 368 (App.Div.1951) ("The common law rule which requires for valid action the affirmative vote of a mere majority of a quorum will prevail in the absence of a statutory provision"); see also Matawan Regional Teachers Association v. Matawan-Aberdeen Regional Board of Ed., 223 N.J.Super. 504, 507, 538 A.2d 1331 (App.Div.1988) (where an enhanced majority voting requirement by a local school board was struck down as preempted by state law, for the proposition that unless the Legislature has expressly provided for enhanced voting requirements, a simple majority vote is the rule).
In Matawan, the Court expressly rejected the contention that the Legislature merely established a minimum number of affirmative votes requisite for agency action, cautioning that,
Depriving the majority of its authority and responsibility to govern in favor of broader consensus carries the risk of inaction where action is warranted. There may be actions that should be taken with the affirmative votes of an enhanced majority because of their overwhelming importance or because they *324 constitute a departure from the norm. The Legislature has provided for such instances by requiring the vote of an enhanced majority. Id.

In the case at bar, there is no justification for a supermajority. Accordingly, Section 6.03.010 of the Amendment is declared null and void.
NOTES
[1] See also An Interim Report of the County and Municipal Government Study Commission: Creative localism: a prospectus (March 11, 1968). "New Jersey is in desperate need of a better allocation of the fiscal and governmental responsibilities for the planning, financing, and performance of the functions and services provided by its local government systemespecially those of area-wide or regional scope." Id. at xv (citations omitted).
[2] The change was deemed "a technical amendment to the statute intended (i) to make the provisions of the charter law internally consistent[,] (ii) to correct typographical mistakes, (iii) to provide further clarification of some points, or (iv) to make the charter law consistent with other relevant sections of the New Jersey Statutes." See N.J. Assembly Bills 1974: Nos. 1226-1875, 1974-1975 Session, Assembly Bill 1287 at 29.
[3] For the reasons set forth in a forty-six page written opinion issued on February 22, 2001, the court entered an order disqualifying the firm of Hill Wallack from representing the Board. The court held that the firm represented parties with adverse interests of the County at the time it undertook to represent the Board as Special Counsel.
[4] This case was filed as Board of Chosen Freeholders of Mercer County v. Mathesius, MER-L-139345-80. Oral argument for the decision was held on November 6, 1981. The plaintiff's subsequently appealed Judge Levy's decision, however, the Appellate Division dismissed the appeal. Board of Chosen Freeholders of Mercer County v. Mathesius, No. 1566-81-T2 (App. Div. April 3, 1982). See 34 Michael Pane, New Jersey Practice § 7.34 (3d ed.1999) (citing Board of Chosen Freeholders of Mercer County v. Mathesius, No. MER-L-3934580-PW (Ch. Div. October 23, 1981)).
[5] The court noted that prior to the Optional County Charter Act, N.J.S.A. 40:41A-141 specifically provided the Board of Freeholders with the power to select the auditor for the annual County audit. This statute was repealed in 1975. Id. at 9. The court found that the "meaning of the repealer was the obvious Legislative intent specifically to differentiate between the various forms of county Government." Id.
[6] The effect on the Act on statutory provisions calling for Freeholders appointments for specified terms has been discussed and conclusively decided in Angelo v. Shapiro, 168 N.J.Super. 459, 403 A.2d 496 (1979). In this case, the court held that a county treasurer who had been appointed to a statutory three year term of office by the freeholders could be terminated by an incoming county executive, as the Act superseded the general law provision calling for freeholder appointment for a specified term. In accordance with this authority, the three-year term referenced in the Amendment must also be stricken.
[7] These provisions include N.J.S.A. 40:41A-86 to -149.
[8] These provisions include N.J.S.A. 40:41A-86 to -149.
[9] See also An Interim Report of the County and Municipal Government Study Commission: Creative localism: a prospectus (March 11, 1968). "New Jersey is in desperate need of a better allocation of the fiscal and governmental responsibilities for the planning, financing, and performance of the functions and services provided by its local government systemespecially those of area-wide or regional scope." Id. at xv (citations omitted).